# 15-3105

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———————————

**ANDREW CARLIN,**

individually and on behalf of a class,

Plaintiff-Appellant,

**-v.-**

**DAVIDSON FINK LLP**

Defendant-Appellee.

———————————

On Appeal from the United States District Court for the
Eastern District of New York, No. 2:13-cv-06062
(Hon. Joanna Seybert, U.S.D.J.)

———————————

## PLAINTIFF-APPELLANT ANDREW CARLIN'S OPENING BRIEF

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.    THE FAIR DEBT COLLECTION PRACTICES ACT. . . . . . . . . . . 15

    III.    THE DISTRICT COURT ERRED IN HOLDING THAT DAVIDSON WAS NOT ACTING AS A DEBT COLLECTOR BY FILING A FORECLOSURE ACTION THAT ALSO SOUGHT A DEFICIENCY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    IV.    THE §1692g NOTICE OF DEBT ATTACHED TO DAVIDSON'S FORECLOSURE COMPLAINT WAS A "COMMUNICATION IN CONNECTION WITH THE COLLECTION OF A DEBT.". . . . . . 31

        1.    A validation notice is an attempt to collect a debt and must comply with §1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        2.    Mr. Carlin's inquiry in response to the invitation extended by the §1692g notice is a "communication with a consumer". . . . . . . .. .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

        3.    Davidson's letter of August 9, 2013 is also a "communication with a consumer" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

    V.    DAVIDSON DID NOT COMPLY WITH §1692g. . . . . . . . . . . . . 41

VII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF COMPLIANCE REQUIRED BY Rule 32(a). . . . . . . . . . . . .  45

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

# TABLE OF AUTHORITIES

## CASES

*Akalwadi v. Risk Management Alternatives, Inc.,* 336 F.Supp.2d 492, 503 and n.4 (D. Md 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988). . . . . . . . . . . . . . . 14, 30

*Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982). . . . . . . . . . . . . 16

*Beadle v. Haughey,* 04-272, 2005 WL 300060 (D.N.H, Feb. 9, 2005)). . . . . . 29, 30

*Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991). . . . . . . . 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007). . . . . . . . . 12, 13, 14

*Bernstein v. Howe,* IP 02-192-C-K/H, 2003 WL 1702254, *5 (S.D.Ind., March 31 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*Birster v. American Home Mortgage Servicing, Inc.,* 11-13574, 2012 U.S. App. LEXIS 14660 (11th Cir., July 18, 2012). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Boyd v. J. E. Robert Co.,* No. 05-CV-2455 (KAM) (RER), 2013 WL 5436969 (E.D.N.Y., Sept. 27, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . 13

*Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990). . . . . . . . . . . . . . . . . 16

*Castro v. Green Tree Servicing, LLC,* No. 10-CV-724 (ER), 2013 WL 4105196, *6 (S.D.N.Y, Aug. 14, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 41

*Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941 (D. Conn. 1993). . 15, 34

*Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993). . . . . . . . . . . . . . . . 15

*Derisme v. Hunt Leibert Jacobson P.C.,* 880 F.Supp.2d 311 (D.Conn.2012). . 29, 30

*Doe v. Smith,* 429 F.3d 706, 708 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . 14

*Drennan v. Van Ru Credit Corp.,* 950 F.Supp. 858, 861 (N.D.Ill. 1996). . . . . . . 35

*Ellis v. Solomon and Solomon, P.C.,* 591 F.3d 130, 135-137 (2nd Cir. 2010). . . . 32

*Fait v. Regions Financial Corp.*, 655 F.3d 105, 109 (2d Cir. 2011). . . . . . . .  12, 13

*Foti v. NCO Fin. Sys., Inc.*, 424 F.Supp.2d 643, 661 (S.D.N.Y.2006). . . . . .  16, 33

*Freire v. Aldridge Connors, LLP*, No. 13-62069, 2014 WL 407357,
    *4 (S.D.Fla., Feb. 4, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32, 34

*Fritz v. Resurgent Capital Services, LP,* No. 11-CV-3300 FB VVP, 2013 WL
    3821479, *4 (E.D.N.Y. July 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . .  43

*FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). . . . . . . . . . . . . . . . . . . . . .  16

*Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7th Cir., July 27, 2010). . . . .  20

*George v. Smith*, 507 F.3d 605, 608 (7th Cir.2007). . . . . . . . . . . . . . . . . . . . .  12

*Gibson v. Bob Watson Chevrolet-GEO, Inc.,* 112 F.3d 283, 285-6 (7th Cir. 1997).  43

*Gizzi v. Hall,* 309 A.D.2d 1140, 767 N.Y.S.2d 469 (3rd Dep't. 2003). . . . . . . . . .  17

*Glazer v. Chase Home Finance, LLC,* 704 F.3d 453, 455, 459-64
    (6th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Goldman v. Cohen,* 445 F.3d 152, 156-157 (2nd Cir. 2006). . . . . . . . . . . . . . . .  32

*Gray v. Four Oak Court Ass'n, Inc.,* 580 F.Supp.2d 833, 888 (D. Minn. 2008). . .  25

*Hart v. FCI Lender Services, Inc.,* 797 F. 3d 219 (2nd Cir. 2015). . . . . . . .27, 31, 33

*Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010). . . . . .  14

*Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2008). . . . . . . . . . . . . . . . .  12

*Heintz v. Jenkins,* 514 U.S. 291, 292, 294 (1995). . . . . . . . . . . . . . . . . . . . . . .  23

*Hooks v. Forman Holt Eliades & Ravin LLC,* 11 Civ. 2767, 2015 WL 5333513,
    *10 (S.D.N.Y., Sept. 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Huber v. Trans Union, LLC*, 4:11cv139-SEB-DML, 2012 WL 3045686,
    *4 (S.D.Ind., July 25, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Hulse,* 195 F. Supp.2d at 1204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

iv

*In re Humes,* 468 B.R. 346 (Bankr. E.D. Ark. 2011) and 496 B.R. 557 (Bankr. E.D.Ark. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Settlement Facility Dow Corning Trust,* 628 F.3d 769, 773 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Iqbal.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . 34

*Kaltenbach v. Richards,* 464 F.3d 524, 529 (5th Cir. 2006). . . . . . . . . . . . . . 20, 25

*Keene Corp. V. United States,* 508 U.S. 200, 208 (1993). . . . . . . . . . . . . . . . . . 39

*Lang v. TCF National Bank,* 249 Fed.Appx. 464, 466 (7th Cir. Sept. 21, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997). . . . . . . . . . . . . . . . 15

*McMahon v. LVNV Funding,* 744 F.3d 1010, 1015 (7th Cir. 2014). . . . . . . . . . . . 21

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*Montgomery,* 346 F.3d at 699-701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Motorola. Inc. v. Lemko Corp.,* No. 08 C 5427, 2010 WL 960348, at *3 (N.D. Ill. Mar. 15, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973). . . . . 16

*Nikkel v. Wakefield & Asocs. Inc.,* Case no. 10-CV-02411-PAB-CBS, 2001 WL 4479109 (D. Colo. Sept. 26, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

*O'Brien v. Moores,* 784 F.Supp. 2d 1054 (S.D.Ink. 2011) . . . . . . . . . . . . . . . . 39

*Piper v. Portnoff Law Assocs., Ltd.,* 396 F.3d 277, 233-36 (3rd Cir. 2005). . . . 25, 26

*Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pettway v. Harmon Law Offices, P.C., supra,* 03-CV-10932, 2005 WL 2365331, *5 (D.Mass., Sept. 27, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 43

*Ramirez v. Apex Financial Mgmt., LLC,* 567 F.Supp.2d 1035, 1041

(N.D.Ill. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Rawlinson v. Law office of William M. Rudow, LLC,* 460 Fed. Appx. 254 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Reese v. Ellis, Painter, Ratterree & Adams LLP,* 678 F.3d 1211, 1217-18 (11th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rinaldi v. Green Tree Servicing, LLC,* 14cv8351, 2015 WL 5474115 (S.D.N.Y. June 8, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993). . . . . . . . . . . . . . . . . . 38

*Romea v. Heiberger & Associates*, 163 F.3d 111, 116 (2nd Cir. 1998). . . . . 19, 27, 28

*Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). . . . . . . . . . . . 16

*Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 124 (Colo. 1992). . . . 21, 23, 25, 26

*Spencer v. Hendersen-Webb, Inc.,* 81 F.Supp.2d 582, 591 (D.Md. 1999). . . . . . . 42

*Sulehria v. New York*, No. 1:12–CV–0021 (LEK/ATB), 2012 WL 1284380, *2 (N.D.N.Y. April 16, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004). . . . . . . . . . 32

*Tolentino v. Friedman,* 833 F.Supp. 697, 698-99 (N.D.Ill 1993) aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . 34

*Torrico v. International Business Machines Corp.,* 213 F.Supp.2d 390, 396 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wallace v. Washington Mutual Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012). . . . . . . 20

*Wilson v. AT&T Inc.*, 1:09cv58, 2010 WL 987737 at *1 (S.D. Ind. Mar. 12, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson v. Draper & Goldberg, P.L.L.C.,* 433 F.3d 373, 376 (4th Cir. 2006). . . . . 26

*Veach v. Sheeks,* 316 F.3d 690 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 42, 43, 44

*Vincent v. City Colleges of Chicago,* 485 F.3d 919, 923-924 (7th Cir. 2007). . . . . 13

*Vincent v. The Money Store, 736 F.3d 88 (2nd Cir. 2013).* . . . . . . . . . . . . . . . . 27

*Vien-Phuong Thi Ho v. Recontrust Company, Na, et al.*. . . . . . . . . . . . . . . . . . . 21

# RULES, STATUTES, AND REGULATIONS

15 U.S.C. §§1601 et seq., Consumer Credit Protection Act.. . . . . . . . . . . . . .  15, 31

15 U.S.C. §1692 et seq., Fair Debt Collection Practices Act. . . . . . . . . . . . . . *passim*

15 U.S.C. §1692a(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33, 40

15 U.S.C. §1692a(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18, 22

15 U.S.C. §1692a(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 22, 25, 26, 29

15 U.S.C. §1692c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 38

15 U.S.C. §1692d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 22, 23

15 U.S.C. §1692(e). . . . . . . . . . . . . . . . . . . . . .  15, 18, 20, 22, 23, 35, 38

15 U.S.C. §1692f. . . . . . . . . . . . . . . . . . . . . . . . .  22, 23, 24, 25, 26, 27

15 U.S.C. §1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. §1692i. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

15 U.S.C. §1692k. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

15 U.S.C. §§6801 et seq., Gramm-Leach-Bliley Act. . . . . . . . . . . . . . . . . . . . . . .  8

26 U.S.C. §§1 et seq., Internal Revenue Code of 1986. . . . . . . . . . . . . . . . . . . .  8

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. §1292(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 10

28 U.S.C. §1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5, 12

Mich. Comp Laws §600.3204 and 3205a(1). . . . . . . . . . . . . . . . . . . . . . . . .  26

Real Property Actions and Proceedings Law "RPAPL" §1301, §1341,
§1371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17, 18, 28

Tenn. Code Ann.§35-5-101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## JURISDICTIONAL STATEMENT

This action was brought under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). The United States District Court for the Eastern District of New York had jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1692k. This Court has appellate jurisdiction under 28 U.S.C. §1291 because the appeal is from a final judgment (Appendix ("App.") 328) that disposed of all the claims with respect to all parties.

On September 30, 2015, the District Court granted defendant's motion for reconsideration (App. 303-311) of the District Court's Order of September 23, 2014 denying Defendant's motion to dismiss (App. 270-298) the complaint ("Cmplt", App. 1-56) pursuant to Fed.R.Civ.P. 12(b)(6). The District Court's decision of September 23, 2014 is reported at 2014 WL 4826248. The District Court's decision of September 30, 2015 is reported at 2015 WL 5794250. Judgment in favor of defendant was entered on September 30, 2015. (App. 313) On October 2, 2015, plaintiff filed a notice of appeal. (App. 315-328)

Plaintiff Andrew Carlin appeals (1) the order granting defendant's motion for reconsideration of the District Court's Order of September 23, 2014 denying defendant's motion to dismiss the complaint entered on September 30, 2015 (App. 303-311) and the resulting judgment entered September 30, 2015 (App. 313), and (2) all previous orders affecting the judgment.

1

## ISSUES PRESENTED FOR REVIEW

1.  Did the District Court err in holding that defendant was not acting as a debt collector by filing a foreclosure action that also sought a deficiency judgment?

2.  Did Davidson violate 15 U.S.C. §1692g by attaching the "Notice of Debt" required by §1692g as an exhibit to a foreclosure complaint, when neither the Notice itself nor the foreclosure complaint states the present amount of the debt?

3.  Is a Notice of Debt pursuant to 15 U.S.C. §1692g that is gratuitously attached to a foreclosure complaint considered exempt as "a communication in the form of a formal pleading in a civil action" pursuant to §1692g(d)?

4.  Is Carlin's letter of July 12, 2013 responding to the invitation in the §1692g "Notice of Debt" a communication in connection with collection of a debt, triggering §1692g?

5.  Is Davidson's letter of August 9, 2013 a communication in connection with collection of a debt which triggered §1692g?

## STATEMENT OF THE CASE

Plaintiff Andrew Carlin ("hereinafter "plaintiff" or "Carlin") commenced this lawsuit against defendant Davidson Fink, LLP (hereinafter "defendant" or "Davidson" ) on October 31, 2013, alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") (App. 2-56).

Davidson is a debt collector who regularly collects consumer debts originally owed to others, including residential mortgage debts.  Davidson has been attempting to collect from Carlin a residential mortgage loan obtained for personal, family or household purposes. Carlin's mortgage loan was alleged to be in default when Davidson first became involved with it.

On or about June 24, 2013, Davidson filed, on behalf of Deutsche Bank National Trust Company, a foreclosure action against Carlin in the New York State Supreme Court, Nassau County (App.10-48).  The foreclosure complaint specifically requested a deficiency judgment:

> ¶6. That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency  in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s). . . for any  deficiency which may remain after applying all of such moneys [sic] so applicable thereto[.]

(App.18).

Davidson attempted to provide the notice of debt  required by 15 U.S.C. §1692g by means of an attachment to the foreclosure complaint (App. 21). The purported §1692g notice is on the 11th page of the foreclosure complaint.

Prior to the foreclosure complaint, Mr. Carlin did not receive any other communication from Davidson. No other communication was sent to Mr. Carlin by Davidson.

The foreclosure complaint does not state the present amount of the debt. Attached to the foreclosure complaint is Schedule C which lists the original loan amount and the principal balance owing. However, the foreclosure complaint also claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other charges."

Carlin responded to the §1692g notice attached to the foreclosure complaint by letter of July 12, 2013, in which Carlin disputed the debt with Davidson (App. 49-52).

More than 5 days afterwards, by letter of August 9, 2013, Davidson provided additional information about the debt (App.53-56). The August 9, 2013 letter from Davidson enclosed a "payoff statement" which stated an amount of the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void after' date, but which are not yet due as of the date this Payoff Statement is issued." The payoff statement include payoff instructions, including to whom the payoff funds are to be made payable, and an address where payoff funds are to be sent.

Carlin alleges that Davidson failed to provide the present "amount of the debt" as required by 15 U.S.C. §1692g(a)(1).

4

On December 20, 2013 Davidson moved to dismiss Carlin's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, Davidson argued that (1) Davidson was not acting as a debt collector because the FDCPA does not apply to foreclosure actions, (2) Davidson's foreclosure complaint was not an initial communication and (3) Davidson provided plaintiff with the amount of the debt in the Payoff Statement.

On September 23, 2014 the District Court entered a Memorandum and Order denying defendant's motion to dismiss the complaint. Subsequently, on October 7, 2014, defendant filed a motion requesting reconsideration of the Court's Memorandum and Order of September 23, 2014 denying defendant's motion to dismiss, or alternatively, that the district court certify the September 23, 2014 Order pursuant to 28 U.S.C. §1292(b).

In its motion for reconsideration Davidson argued that: (1) Davidson was not acting as a debt collector, and (2) there was never an "initial communication" between plaintiff and Davidson.

On September 30, 2015, the District Court entered a Memorandum and Order granting defendant's motion for reconsideration and plaintiff's complaint was dismissed with prejudice. The District Court held that the filing of a foreclosure action was not debt collection, even where a deficiency judgment was sought.

The district court's dismissal order was entered on the court's docket on September 30, 2015. Plaintiff filed a notice of appeal on October 2, 2015.

## STATEMENT OF FACTS

Defendant Davidson Fink, LLP ("Davidson") is a debt collector.  It holds itself out and advertises that it is a debt collector.  Davidson states on its web site "At Davidson Fink LLP, we provide a wide range of debt collection services to financial institutions, banks, servicers, credit unions and various commercial and consumer lending clients.  We offer immediate and an inexpensive options to recover unpaid funds with a comprehensive collection process which includes negotiating payment plans, judgment execution and enforcement." (http://www.davidsonfink.com/practice-areas/business-law)(Cmplnt., App.2-56, ¶7).

Davidson thus regularly and as an integral part of its business collects consumer debts that are owed to others and which are in default when Davidson first becomes involved with them. Davidson regularly  uses the mails and telephone to collect consumer debts (including residential mortgage debts) originally owed to others (App. 3, ¶9). Davidson  is a debt collector as defined in the FDCPA.  (App. 3, ¶10)

 Davidson has been attempting to collect from plaintiff an alleged debt consisting of a defaulted residential mortgage loan, used for personal, family or household purposes and not for business purposes.  (App. 3, ¶11).

In an effort to collect the residential mortgage debt, on or about June 24, 2013 Davidson filed, on behalf of Deutsche Bank National Trust Company, a foreclosure action against Andrew Carlin in the New York State Supreme Court for Nassau County.  The foreclosure complaint expressly requested a deficiency

judgment. Davidson attempted to provide the notice required by 15 U.S.C.§1692g by way of an attachment to the foreclosure complaint. The §1692g notice attached to the foreclosure complaint states "the amount of the debt is stated in the complaint hereto attached." (App. 21).

However, the foreclosure complaint does not state the amount of the debt. Attached to the foreclosure complaint is a Schedule C, which lists the original loan amount and the principal balance owing. However, the complaint also claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other changes." (App. 24)

Prior to the complaint Mr. Carlin did not receive any letters or other communication from Davidson. On information and belief, none was sent.

Mr. Carlin responded to the §1692g notice attached to the foreclosure complaint by letter of July 12, 2013, in which Mr. Carlin disputed the debt. (App. 50-52).

More than five days afterwards, by letter of August 9, 2013, Davidson provided additional information about the debt (App. 54-56). The August 9, 2013 letter enclosed a "payoff statement" which stated an amount of the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement void After' date, but which are not yet due as of the date this Payoff Statement is issued." The payoff statement also includes "payoff instructions" including to whom the payoff check should be made payable and the address to which payment should be sent.

Plaintiff alleges in his complaint that Davidson did not provide the "amount of the debt" as required by 15 U.S.C. §1692g(a)(1).

Section 1692g provides:

§ 1692g.  Validation of debts

(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . .

> **(1) the amount of the debt;**
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. . . .

(d) A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section. (Emphasis added).

8

## SUMMARY OF THE ARGUMENT

Davidson has been attempting to collect a residential mortgage loan from Carlin that was incurred for personal, family and household purposes. The loan was in default when Davidson first became involved with it.

On or about June 24, 2013, Davidson filed, on behalf of Deutsche Bank National Trust Company a foreclosure action against Mr. Carlin in the New York Supreme Court, to enforce and collect a residential mortgage debt. The foreclosure action expressly sought a deficiency judgment.

Davidson attempted to provide the notice required by 15 U.S.C. §1692g by means of an attachment to the foreclosure complaint. The §1692g notice is the 11th page. Prior to the complaint, Mr. Carlin did not receive any letter or other communication from Davidson. On information and belief, none was sent.

Carlin alleges that Davidson violated §1692g(a)(1) of the FDCPA because the complaint does not state the present amount of the debt. Attached to the foreclosure complaint is a Schedule C which lists the original loan amount ands the principal balance owing. However, the complaint also claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other charges."

Carlin responded to the §1692g notice with a letter dated July 12, 2013 disputing the debt. By letter of August 9, 2013, Davidson provided additional information about the debt. The August 9, 2013 letter from Davidson enclosed a "payoff statement" which stated an amount of the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or

9

escrow disbursements that will become due prior to the 'Settlement Void After' date, but which are not yet due as of the date this Payoff Statement is issued"

Davidson violated §1692g(a)(1) of the FDCPA, which requires a debt collector to send a consumer a written notice of debt containing, among other matters, the amount of the debt.

Plaintiff alleges that attachment of the initial notice required by §1692g(a)(1) to the foreclosure complaint is subject to, and must comply with §1692g. Alternatively, either Carlin's letter of July 12, 2013 or the letter August 9, 2013 Davidson communication that included the Payoff Statement is the initial communication requiring Davidson to comply with §1692g.

Davidson moved to dismiss the complaint arguing that (1) Davidson was not acting as a debt collector because the FDCPA does not apply to foreclosure actions, (2) there was never any initial communication between Davidson and plaintiff, and (3) Davidson provided the amount of the debt in the Payoff Statement.

On September 23, 2014, the District Court denied Davidson's Motion to Dismiss. Davidson subsequently filed a motion for reconsideration or for certification pursuant to 28 U.S.C. §1292(b). On September 30, 2015 the District Court entered a Memorandum granting Davidson's motion for reconsideration holding that the District Court erred in holding that Davidson was acting as a debt collector.

This ruling was erroneous. Davidson filed a foreclosure complaint that sought a deficiency judgment. Numerous courts have held that foreclosure actions

10

are subject to the FDCPA, especially when a deficiency judgment is sought. Davidson's purpose is to obtain money, not the real estate. This Court should reverse the District Court's dismissal of the complaint and hold that foreclosure actions are subject to the FDCPA, and that Davidson was acting as a debt collector when it filed the foreclosure action on behalf of Deutsche Bank National Trust Company against Carlin.

# ARGUMENT

## I.     STANDARD OF REVIEW

This Court reviews de novo "a District Court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo . . . ." *Fait v. Regions Financial Corp.*, 655 F.3d 105, 109 (2d Cir. 2011).

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." This "short and plain statement" must be enough " 'to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-557 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The Supreme Court did "not require heightened fact pleading of specifics," but did demand that the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. See also *George v. Smith*, 507 F.3d 605, 608 (7th Cir.2007).

"Even after *Twombly*, courts must still approach motions under Rule 12(b)(6) by 'constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.' " *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2008). "We review a District Court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo, accepting all factual allegations in the

complaint as true and drawing all reasonable inferences in the plaintiff's favor."
*Fait v. Regions Financial Corp.*, 655 F.3d 105, 109 (2d Cir. 2011).

Moreover, a plaintiff "is not required to prove [his] case in [his] complaint, even in the post-*Twombly* and *Iqbal* environment: the Federal Rules still follow a notice-pleading regime, and they do not 'impose a probability requirement on the plaintiffs.'" *Motorola. Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 960348, at *3 (N.D. Ill. Mar. 15, 2010),  quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). *Accord, Sulehria v. New York*, No. 1:12–CV–0021 (LEK/ATB), 2012 WL 1284380,  *2 (N.D.N.Y. April 16, 2012) ("a plaintiff is certainly not required to prove her case in her initial complaint").  Rather, a plaintiff need only provide sufficient plausible facts to put the defendant on notice of his claims. *Brooks*, 578 F.3d at 581.  "A plaintiff need not prove her case in the complaint," but merely show facts "beyond simple conjecture that the plaintiff is entitled to relief." *Wilson v. AT&T Inc.*, 1:09cv58, 2010 WL 987737 at *1 (S.D. Ind. Mar. 12, 2010).  "[T]he changes that *Twombly* and its progeny have brought to the standard of review for Rule 12 motions have not changed the liberal notice pleading standard of the federal rules." *Wilson*, 2010 WL 987737 at *5.

In particular, there is no requirement that every fact that must ultimately be proven be alleged in a complaint:

> We have distinguished notice pleading from evidentiary proof by stressing that "[f]acts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' " *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-924 (7th Cir. 2007). Further, we have admonished that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain ...' should stop and think:

13

What rule of law requires a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original).

*Lang v. TCF National Bank*, 249 Fed.Appx. 464, 466 (7th Cir. Sept. 21, 2007).

*Accord, Huber v. Trans Union, LLC*, 4:11cv139-SEB-DML, 2012 WL 3045686, *4 (S.D.Ind., July 25, 2012).

Also, while a complaint must "give full notice of the circumstances giving rise to the plaintiffs claim for relief," it need not "also correctly plead the legal theory or theories and statutory basis supporting the claim." *Torrico v. International Business Machines Corp.*, 213 F.Supp.2d 390, 396 (S.D.N.Y.2002) (citations and internal quotations omitted). "The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988). This principle has not changed in the wake of plausibility pleading requirements. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010) ("Although [*Twombly* and *Iqbal* ] require that a complaint in federal court allege facts sufficient to show that the case is plausible, they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories.") (internal citations omitted).

## II.  THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e).  It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt.  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997).  The FDCPA broadly prohibits unfair or unconscionable collection methods including: conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.   It also requires specified disclosures.  15 U.S.C. §§1692(e)(11), 1692g.   Debt collectors are liable if they fail to provide the specified disclosures.

Whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer," *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993).  The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action. "The question is not whether the plaintiff was deceived or misled, but rather whether an unsophisticated consumer would have been misled."  *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its consumer-protection purposes.  *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is

15

remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated"). Plaintiff need not allege anything more than that the disclosures required by the FDCPA were not provided.

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982). "Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *accord, Foti v. NCO Fin. Sys., Inc.*, 424 F.Supp.2d 643, 661 (S.D.N.Y.2006) ("The FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages.").

16

**III. THE DISTRICT COURT ERRED IN HOLDING THAT DAVIDSON WAS NOT ACTING AS A DEBT COLLECTOR BY FILING A FORECLOSURE COMPLAINT THAT SOUGHT A DEFICIENCY JUDGMENT**

The District Court erred in holding that:

[U]nder New York law, the holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies. Because it sought to foreclose on the property Davidson Fink was not engaging in the collection of a debt as a matter of law.

Davidson cited *Gizzi v. Hall*, 309 A.D.2d 1140, 767 N.Y.S.2d 469 (3rd Dep't. 2003) in support of its argument that it sought a foreclosure, and thus was not acting as a debt collector. The *Gizzi* court was addressing §1301 of New York's Real Property Actions and Proceedings Law ("RPAPL"). Section 1301 provides:

Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage[.]

Section 1301 prohibits a plaintiff from bringing duplicative actions. However, it does not, or at least Davidson did not interpret it to, prohibit seeking a deficiency judgment in a foreclosure complaint. Paragraph 6 of Davidson's prayer for relief requests a deficiency judgment, thus seeking the payment of money to satisfy an alleged obligation which falls squarely within the definition of "debt" in §1692a(5):

¶6. That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the

17

defendant(s). . . for any deficiency which may remain after applying all of such moneys [sic] so applicable thereto[.]

Regardless of whether it was proper for Davidson to seek money, it did, and the request clearly triggered the FDCPA. Section 1692a(5) defines "debt" to include an "alleged" obligation. As such, Davidson's request for a deficiency judgment was sufficient to make the FDCPA applicable regardless of the legality of such request.

Furthermore, RPAPL §1371 expressly authorizes entry of a deficiency judgment in a mortgage foreclosure upon a motion made after the sale of the property. The sale of the property helps establishes the amount of the deficiency. RPAPL §1301 merely makes the motion the sole means by which a plaintiff can obtain a deficiency judgment, prohibiting the filing of a separate lawsuit for that purpose. In fact, a New York foreclosure complaint typically asks for foreclosure, establishment of an amount of a deficiency by sale, followed by a deficiency.

Davidson's contention that there is no attempt to collect money until a motion for deficiency is made is unsupported by precedent or logic. The issuance of a "payoff statement" shows the purpose of the entire proceeding. Also, RPAPL §1341 states that upon tender of the amount due, as well as, fees and costs, the case shall be dismissed. Certainly in this case, the purpose is to acquire money, not real estate. Section 1692g is triggered by the initial communication "in connection with the collection of any debt" and §1692(e) by "any . . . representation or means in connection with the collection of any debt." The

FDCPA covers a communication in connection with determining the amount of and liability for a consumer debt, not just direct requests for payment.

In *Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2nd Cir. 1998)*,* this Court held that the statutory notice that precedes the filing of an a eviction is an attempt to collect a debt even if only eviction is sought, because at bottom the landlord wants money. 163 F.3d at 116. Thus a debt collector cannot evade compliance with the FDCPA by asking for a determination of liability for a debt and delaying entry of a money judgment. The District Court's determination that Davidson had not engaged in debt collection because it filed a foreclosure action was erroneous.

Every Court of Appeals to have addressed the issue has held that foreclosure of a residential mortgage, at least where a deficiency is sought, is "debt collection" subject to the FDCPA because its principal objective is to coerce the homeowner to pay money, and that lawyers and others regularly engaging in mortgage and lien foreclosures are subject to the FDCPA.

**Third Circuit:** *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 233-36 (3d Cir. 2005) (FDCPA applies to collection of overdue water and sewer obligations via lien filed against consumer's house; also relied on letters requesting payment).

**Fourth Circuit:** *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (FDCPA applies to actions of attorneys hired to initiate non-judicial foreclosure; concerned over the "enormous loophole" that would result otherwise, but also relying on direct requests for payment to conclude that FDCPA applies); *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed.

19

Appx. 254 (4th Cir. 2012) (replevin action is covered by FDCPA, both with respect to the debtor and a family member named as a defendant because " Rudow Law explained that it had named Rawlinson as a defendant in the replevin action because she stated that Moore lived with her and, therefore, "she would also have reasonably been in possession of, or known the location of, the subject vehicle.").

**Fifth Circuit:** *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006)("a party who satisfies §1692a(6)'s general definition of a 'debt collector' is a debt collector for purposes of the entire FDCPA even when enforcing security interests").

**Sixth Circuit:** *Wallace v. Washington Mut. Bank, F.A.,* 683 F.3d 323 (6th Cir. 2012); *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 455 (6th Cir. 2013) ("we hold that mortgage foreclosure is debt collection under the Act").

**Seventh Circuit:** *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) (request for information to evaluate modification covered even if there is no "explicit demand for payment.").

**Eleventh Circuit:** *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012) (noting that a contrary "rule would create a loophole in the FDCPA. A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of §1692(e) by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right.

20

It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A 'debt' is still a 'debt' even if it is secured."); *Birster v. American Home Mortgage Servicing, Inc.*, 11-13574, 2012 U.S. App. LEXIS 14660 (11th Cir., July 18, 2012) (same).

There are **no** contrary Court of Appeals decisions.

A state Supreme Court has agreed, *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992), as have many district court decisions. *Hooks v. Forman Holt Eliades & Ravin LLC*, 11 Civ. 2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015). Further, the Consumer Financial Protection Bureau ("CFPB"), the federal agency charged with implementing the FDCPA, has on at least two occasions stated that foreclosure is debt collection under the FDCPA. Brief of Amicus Curiae Consumer Financial Bureau Supporting Reversal, *Birster v. American Home Mortgage Servicing Inc.*[1],and Brief of Amicus Curiae Consumer Financial Bureau Supporting Reversal, *Vien-Phuong Thi Ho v. Recontrust Company, Na, et al*[2]. The CFPB's view is entitled to deference. *McMahon v. LVNV Funding*, 744 F.3d 1010, 1015 (7th Cir. 2014).

---

[1]http://files.consumerfinance.gov/f/201112_CFPB_Birster-amicus-brief.pdf

[2]http://files.consumerfinance.gov/f/201508_cfpb_amicus-brief_ho-v-recontrust-n.pdf.

21

The contrary lower court decisions were soundly rejected in *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453 (6th Cir. 2013), where the court addressed the matter at length:

> The FDCPA speaks in terms of debt collection. For example, to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken "in connection with the collection of any debt," e.g., 15 U.S.C. §§1692c(a)-(b), 1692d, 1692e, 1692g, or in order "to collect any debt," id. § 1692f. In addition, to be a "debt collector" under the Act, one must either (1) have as his or her principal business purpose "the collection of any debts" or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due ... another." Id. § 1692a(6). Despite the Act's pivotal use of the concept, however, it does not define debt collection. While the concept may seem straightforward enough, confusion has arisen on the question whether mortgage foreclosure is debt collection under the Act. We have not addressed the issue. Nor has the Consumer Financial Protection Bureau offered an authoritative interpretation on the matter. See 15 U.S.C. § 1692l(d). Other courts have taken varying approaches on the issue. . . . (704 F.3d at 459-60)

After noting that the contrary decisions rely on "the premise that the enforcement of a security interest, which is precisely what mortgage foreclosure is, is not debt collection," the court held that "we find this approach unpersuasive and therefore decline to follow it." (704 F.3d at 460) It explained:

> Unfortunately, the FDCPA does not define "debt collection," and its definition of "debt collector" sheds little light, for it speaks in terms of debt collection. See 15 U.S.C. § 1692a(6); cf. *In re Settlement Facility Dow Corning Trust,* 628 F.3d 769, 773 (6th Cir.2010) (noting that a definition containing the defined term is not likely to be helpful). But the statute does offer guideposts. It defines the word "debt," for instance, which is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1692a(5). The focus on the underlying transaction indicates that whether an obligation is a "debt" depends not on whether the obligation is secured, but rather upon the purpose for which it was incurred. . . .

22

In addition, the Act's substantive provisions indicate that debt collection is performed through either "communication," id. § 1692c, "conduct," id. § 1692d, or "means," id. §§ 1692e, 1692f. These broad words suggest a broad view of what the Act considers collection. Nothing in these provisions cabins their applicability to collection efforts not legal in nature. *Cf. Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that "a lawyer who 'regularly,' through litigation, tries to collect consumer debts" is a "debt collector" under the Act). Foreclosure's legal nature, therefore, does not prevent if from being debt collection.

Furthermore, in the words of one law dictionary: "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." Black's Law Dictionary 263 (6th ed.1990). The Supreme Court relied on this passage when it declared the following in a case concerning the Act's definition of "debt collector": "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Heintz*, 514 U.S. at 294 (emphasis added). Thus, if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection. Nothing in this approach prevents mortgage foreclosure activity from constituting debt collection under the Act. *See Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo.1992) (explaining that "foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt"). . . . (704 F.3d at 460-61)

The Sixth Circuit concluded that all mortgage foreclosures are intended to obtain payment on a debt – a proposition that is obvious from the contents of Cmplt., Exs. A-C in the instant case:

In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment. See Eric M. Marshall, *Note, The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn.

23

L.Rev. 1269, 1297–98 (2010). Accordingly, mortgage foreclosure is debt collection under the FDCPA.

Other provisions in the Act reinforce this view. The Act nowhere excludes from its reach foreclosure or the enforcement of security interests generally. In fact, certain provisions affirmatively suggest that such activity is debt collection. Section 1692f prohibits "debt collectors" from using "unfair or unconscionable means" to "collect any debt." After stating this general prohibition, the section sets forth a non-exhaustive list of specific activities prohibited thereunder, one of which is "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" if, e.g., "there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]" 15 U.S.C. § 1692f(6)(A). Foreclosure in some states is carried out in just this way—through "nonjudicial action," the result of which is to "effect dispossession" of the secured property. See, e.g., Mich. Comp. Laws § 600.3204 (authorizing foreclosure by advertisement only if no lawsuit has been filed to recover the underlying debt); Tenn.Code Ann. § 35–5–101 (permitting foreclosure by advertisement). The example's presence within a provision that prohibits unfair means to "collect or attempt to collect any debt" suggests that mortgage foreclosure is a "means" to collect a debt. . . . (704 F.3d at 461-2)

Our holding today is supported by decisions from our sister circuits. . . .

Courts that hold that mortgage foreclosure is not debt collection offer different reasons for this view. Some reason that the FDCPA is concerned only with preventing abuse in the process of collecting funds from a debtor, and that foreclosure is distinct from this process because "payment of funds is not the object of the foreclosure action." *Hulse,* 195 F.Supp.2d at 1204. We disagree. There can be no serious doubt that the ultimate purpose of foreclosure is the payment of money. (704 F.3d at 462-3)

The Sixth Circuit noted that §1692i, which regulates the venue of mortgage foreclosures and only applies to a "debt collector," would otherwise allow *in rem* actions to be brought in remote venues:

Consider also § 1692i. This section requires a debt collector bringing a legal action against a consumer "to enforce an interest in real property securing the consumer's obligation"—e.g., a mortgage foreclosure action—to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). Although the provision itself does not speak in terms of debt collection, it applies only to "debt collectors" as defined in the first sentence of the

24

definition, id. § 1692a(6), which does speak in terms of debt collection. This suggests that filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act. (704 F.3d at 462)

*Accord*, *Kaltenbach v. Richards, supra*, 464 F.3d 524, 528 (5th Cir. 2006). The Sixth Circuit also rejected the notion that the separate reference in §1692a(6) to persons whose principal business is the enforcement of security interests means that foreclosures are outside the general definition of "debt collector":

> Some courts that hold mortgage foreclosure to be outside the Act rely principally on the definition of "debt collector." After defining a "debt collector" as one whose principal business purpose is the "collection of any debts" or who "regularly" collect debts, the definition's third sentence states: "For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). One who satisfies the first sentence is a debt collector for all sections of the Act, but one satisfying only the third sentence is a "debt collector" limited to § 1692f(6) (concerning non-judicial repossession abuses). *See Kaltenbach*, 464 F.3d at 528; *Montgomery,* 346 F.3d at 699–701. Therefore, these courts reason, "if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts." *Gray v. Four Oak Court Ass'n, Inc.*, 580 F.Supp.2d 883, 888 (D.Minn.2008). To avoid this result, these courts conclude that the enforcement of a security interest, including mortgage foreclosure, cannot be debt collection. Id.

The *Glazer* Court held that the language at issue expanded the scope of "debt collector," in the FDCPA, not created an exception:

> We reject this reading of the statute. The third sentence in the definition does not except from debt collection the enforcement of security interests; it simply "make[s] clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned." *Piper*, 396 F.3d at 236; *see Shapiro & Zartman*, 823 P.2d at 124. It operates to include certain persons under the Act (though for a limited purpose); it

25

does not exclude from the Act's coverage a method commonly used to collect a debt. As the Third Circuit explained in *Piper*,

> [e]ven though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses. Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.

*Piper*, 396 F.3d at 236. And, in the words of the Fourth Circuit, "[t]his provision applies to those whose only role in the debt collection process is the enforcement of a security interest." *Wilson,* 443 F.3d at 378.

The *Glazer* court concluded that the language at issue expanded the FDCPA to repossession agents without removing anything otherwise covered by the FDCPA:

> Other than repossession agencies and their agents, we can think of no others whose only role in the collection process is the enforcement of security interests. A lawyer principally engaged in mortgage foreclosure does not meet this criteria, for he must communicate with the debtor regarding the debt during the foreclosure proceedings, regardless of whether the proceedings are judicial or non-judicial in nature. See, e.g., Mich. Comp. Laws § 600.3205a(1) (requiring the foreclosing party to serve on the borrower before commencing a foreclosure-by-advertisement a written notice containing information about the underlying obligation and stating how to avoid foreclosure); Tenn.Code Ann. § 35–5–101(e) (same); *cf. Reese*, 678 F.3d at 1217 (noting that a foreclosure notice serves more than one purpose). *See also Shapiro & Meinhold*, 823 P.2d at 124 (noting that "attorneys are not exempt [from the Act] merely because their collection activities are primarily limited to foreclosures"). Not so for repossessors, who typically "enforce" a security interest—i.e., repossess or disable property—when the debtor is not present, in order to keep the peace.

> Finally, the fact that the only provision of the Act applicable to those who satisfy the third sentence in the definition (but not the first sentence) concerns non-judicial repossessions—precisely the business of repossessors—also suggests that the sentence applies only to repossessors. Indeed, all of the cases we found where §§ 1692f(6) and 1692a(6)'s third

26

sentence were held applicable involved repossessors. . . . (704 F.3d at 463-4)

The court concluded: "For these reasons, we hold that mortgage foreclosure is debt collection under the Act. Lawyers who meet the general definition of a 'debt collector' must comply with the FDCPA when engaged in mortgage foreclosure. And a lawyer can satisfy that definition if his principal business purpose is mortgage foreclosure or if he 'regularly' performs this function. . . ." (704 F.3d at 464)

Foreclosure should be covered – as noted by the Sixth Circuit, and is obvious from the prayer for relief and the correspondence sent by the defendant in this action, mortgage lenders and servicers are interested in acquiring the consumer's money, not the consumer's real estate. We have rarely seen foreclosure not accompanied by some effort to modify, restructure, induce sale, or otherwise collect money from the homeowner, and this case is no exception. Section 1692f(6) is not an exception to the definition of debt collector, but brings within the FDCPA for limited purposes repossessors of vehicles and similar collateral who try not to have any contact with the debtor.

This Court has applied the FDCPA to various attempts to enforce mortgage loans, *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015); *Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013) ("breach letters" sent as "prerequisite before mortgage lenders like The Money Store can foreclose on a borrower's property" are covered by FDCPA).

Furthermore, defendant's reasoning is similar to that rejected in *Romea*, 163 F.3d at 116, where the defendant claimed that an attorney who regularly served the three-day notice that is required by New York law as a condition precedent to a summary eviction proceeding was not subject to the FDCPA because it "was sent in connection with a possessory *in rem* action under Article 7 of the New York Real Property Actions and Proceedings Law" (163 F.3d at 116) "Heiberger asserts that the purpose of the Article 7 process is not debt collection, but rather 'a means of quickly adjudicating disputes over rights of possession of real property.' Heiberger maintains that the matter of the rent owed by the tenant is 'incidental' to the summary proceeding's primary purpose, that of regaining possession of the premises." (*Id.*)

Rejecting this argument, this Court held: "[A] tenant can avoid the eviction proceeding by paying the owed rent. Although Heiberger is correct that the notice required by §711 is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection." (*Id.*)

Similarly, in this case Carlin can avoid the foreclosure by paying money. RPAPL §1341. *See Hooks v. Forman Holt Eliades & Ravin LLC*, 11 Civ. 2767, 2015 WL 5333513, *10 (S.D.N.Y., Sept. 14, 2015), noting that both eviction and foreclosure notices are intended to induce the recipient to pay money and avoid the loss of property. *Accord, Rinaldi v. Green Tree Servicing LLC,* 14cv8351, 2015 WL 5474115 (S.D.N.Y., June 8, 2015) (following *Glazer*).

28

Defendant relies on *Boyd v. J. E. Robert Co.*, No. 05-CV-2455 (KAM)
(RER), 2013 WL 5436969 (E.D.N.Y., Sept. 27, 2013), which held that the
foreclosure of a tax lien without seeking a personal deficiency was not "debt
collection" on the theory that "if the enforcement of a security interest was
synonymous with debt collection, the third sentence [of 15 U.S.C. §1692a(6)]
would be surplusage because any business with a principal purpose of enforcing
security interests would also have the principal purpose of collecting debts.
Therefore, to avoid this result, the court determines that the enforcement of a
security interest, including a lien foreclosure, does not constitute the 'collection of
any debt.'" This reasoning is seriously flawed because, as pointed out in *Glazer*,
there is a large class of security interest enforcers – repossessors of automobiles
and similar collateral – whose principal business is the enforcement of security
interests without contact with the debtor– indeed, who prefer to operate in the
dead of night in order to avoid such contact. The existence of the third sentence
thus does not mean that persons who ***both*** enforce security interests ***and***
communicate with the consumer seeking money, and who would prefer payment
of money to the taking of the property – such as defendant and others engaged in
the foreclosure of mortgages – are not engaged in debt collection.

Defendant also cites decisions in two *pro se* cases, *Derisme v. Hunt Leibert
Jacobson P.C.,* 880 F.Supp.2d 311 (D.Conn. 2012), and *Beadle v. Haughey*, 04-
272, 2005 WL 300060 (D.N.H., Feb. 9, 2005), which are contrary to the more
recent appellate decisions on point and concluded that prosecuting a foreclosure
action without filing a motion for a deficiency judgment (*Derisme*) or pursuing a

nonjudicial foreclosure (*Beadle*) is not "conduct related to the collection of money." (*Derisme*, 880 F.Supp.2d at 326) This not only presumes that mortgage companies want to acquire real estate rather than money, but ignores the fact that the foreclosure sale helps establish the amount of any deficiency. Surely a debt collector could not avoid complying with the FDCPA by first asking for a declaratory judgment specifying the amount due and then asking for a money judgment.

Both landlords and mortgage companies want money, not vacant real estate. This is obvious from the correspondence involved in this case, in which defendant repeatedly seeks money from plaintiff. The foreclosure complaint sought money. A "Payoff Statement" seeks money. There is no reason to treat the documents at issue in this case differently from any other correspondence seeking money on account of a consumer debt.

**IV.    THE §1692g NOTICE OF DEBT ATTACHED TO DAVIDSON'S
FORECLOSURE COMPLAINT WAS A "COMMUNICATION IN
CONNECTION WITH THE COLLECTION OF A DEBT."**

Davidson's foreclosure complaint attached a document entitled "NOTICE

REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT (THE

ACT) 15 U.S.C. SECTION 1601 AS AMENDED."  Davidson attached the

document even though §1692g(d), as amended in 2006, provides, "A

communication in the form of a formal pleading in a civil action shall not be

treated as an initial communication for purposes of subsection (a)."

While Davidson was not required to attach the §1692g notice to its

foreclosure complaint, it is the policy and practice of Davidson to attempt to

comply with §1692g by:

(1)    Attaching a §1692g notice to the foreclosure complaint, which in any

event does not contain a statement of the "amount of the debt" as required by

§1692g(a)(1).

(2)    Providing a "payoff statement" if the consumer requests the actual

amount of the debt, which payoff statement includes unaccrued charges and thus

also does not state "the amount of the debt."

A §1692g "notice of debt" is quintessentially a debt collection

communication. *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219, 226 (2d. Cir.

2015). It is supposed to provide information about a debt and inform a consumer

of his right to dispute the debt. Its transmission is a mandatory prerequisite to any

further collection activity.  Thus, even a gratuitously provided §1692g notice,

attached to a summons and complaint where it is not required, will be treated as

31

the initial communication and must comply with §1692g. *Freire v. Aldridge Connors, LLP*, 994 F.Supp.2d 1284 (S.D.Fla. 2014); *Nikkel v. Wakefield & Assocs. Inc.,* Case No. 10-cv-02411-PAB-CBS, 2001 WL 4479109 (D. Colo. Sept. 26, 2011).

That is, the "Notice of Debt" itself is not a formal pleading in a civil action, and the exemption for formal pleadings does not extend to a "Notice of Debt" provided to the consumer at the same time as a formal pleading.

It is important to note that the **reason** that Congress amended the FDCPA to include §1692g(d) was to avoid consumer confusion that arose when the consumer was simultaneously provided with a validation notice stating that he had 30 days in which to dispute the debt by correspondence, and a summons which may provide a different time frame and require a court filing. *Thomas v. Simpson & Cybak,* 392 F.3d 914, 919-20 (7th Cir. 2004); *Goldman v. Cohen*, 445 F.3d 152, 156-157 (2nd Cir. 2006); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135-137 (2nd Cir. 2010). Since **any** other oral or written communication with the consumer triggers §1692g -- including a call concerning settlement of a debt following service of the complaint or a conversation about the debt in the hall outside a courtroom – collection lawyers still have to comply with §1692g, and generally do so by mailing a notice before filing a lawsuit.

Instead of doing what most collection lawyers now do, Davidson chose to include a §1692g notice as an attachment to the complaint. When sued because the §1692g notice was substantively deficient, Davidson argues that (1) since the summons and complaint is a "formal pleading in a civil action " to which §1692g

32

does not apply, its "notice of debt" also need not comply with §1692g, and (2) none of the subsequent communications with Mr. Carlin is an "initial communication," either.  These arguments are meritless.

> **1.** **A validation notice is an attempt to collect a debt and must comply with §1692g**

A validation notice is quintessentially an attempt to collect a debt.  The statute describes the document as a "Notice of Debt".  It is required to accurately describe the amount of the debt, identify the creditor to whom the debt is owed, inform the consumer of his rights to dispute the debt and obtain identification of the original creditor, and state that absent a dispute the debt will be assumed to be valid by the debt collector.  15 U.S.C. §1692g(a).  There is no question but that a §1692g notice meets the definition of "communication" in §1692a(2)  –  "the conveying of information regarding a debt directly or indirectly to any person through any medium".  A simple message asking for a return call is a "communication," *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006), so a §1692g notice certainly is.  *Hart*, 797 F.3d at 228.

Attaching the validation notice or some other document that is not part of the complaint and summons to a complaint and summons, does not make it part of a "formal pleading in a civil action " entitled to the exemption.

The "FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated."  *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).   The FDCPA is

liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Financial Systems, Inc.*, 839 F.Supp. 941, 944 (D. Conn. 1993); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

There are a number of decisions in which collection attorneys have included extraneous documents with a summons and complaint as part of abusive tactics. *Tolentino v. Friedman*, 833 F.Supp. 697, 698-99 (N.D.Ill. 1993), aff'd in pertinent part, 46 F.3d 645 (7th Cir. 1995) (ominous "important notice" drafted by debt collector accompanied summons and complaint); *In re Humes*, 468 B.R. 346 (Bankr. E.D. Ark. 2011), later opinion, 496 B.R. 557 (Bankr. E.D. Ark. 2013) ("orange paper" attached to complaint asked consumer to call collection attorney to "avoid the necessity of you appearing in Court or filing an Answer"; consumer called attorney, made payment arrangements, but had default judgment entered against him).   Given this history, there is no reason why an exemption that Congress carefully limited to a "formal pleading in a civil action" should include notices which are neither required nor authorized to be part of a summons and complaint by any statute, rule or caselaw, but which the debt collector chooses to serve with the summons and complaint. *Freire v. Aldridge Connors, LLP; Nikkel v. Wakefield & Associates, Inc.*, 10cv2411, 2011 WL 4479109 (D.Colo., Sept. 26, 2011) (letter accompanying copy of summons and complaint is not exempt).

Moreover, if the §1692g notice attached to the complaint is ***not*** treated as a "communication" and an operative §1692g notice, it is highly misleading.  The notice expressly states that its receipt triggers the 30-day validation period. Davidson contends that this is false and that its notice does not have this effect.  If

the statement in the notice is not given effect, "consumers would have no way of knowing when the thirty day period for disputing the debt began to run." *Castro v. Green Tree Servicing LLC*, No. 10–CV–7211 (ER), 2013 WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013). If there are further communications between the consumer and Davidson, Davidson can claim either that the communication is not a statutory "communication" for some reason (which it claims in this case) or that the time for requesting validation ran from the receipt of the notice attached to the complaint and has expired. Davidson in effect admits to a §1692(e) violation, involving the provision of a *faux* §1692g notice, in order to escape liability under §1692g.[3]

An attorney who undertakes collection of a delinquent residential mortgage debt and does so on a regular basis *is* covered by the FDCPA, and there is no authority for the proposition that sending a consumer a notice containing the §§1692(e)(11) and 1692g disclosures, without more, is not a "communication," so that any noncompliance of the disclosures with §§1692(e)(11) and 1692g can be ignored.

Thus, the Court should hold that the §1692g notice which Davidson appended to the foreclosure complaint is a "communication" that is not a "formal pleading in a civil action," and therefore triggered applicability of §1692g.

---

[3] Since identification of the statutory section violated is not an essential part of a federal complaint, *Drennan v. Van Ru Credit Corp.*, 950 F.Supp. 858, 861 (N.D.Ill. 1996), the complaint stated a valid claim in any case.

### 2. Mr. Carlin's inquiry in response to the invitation extended by the §1692g notice is a "communication with a consumer"

Davidson argued before the District Court that neither (1) the Notice of Debt attached to the foreclosure complaint, (2) the inquiry which Mr. Carlin sent to Davidson in response to the invitation expressly extended by means of the §1692g notice attached to the complaint, nor (3) the August 9, 2013 letter from Davidson attaching a Payoff Statement, which is Davidson's response to that inquiry, is "the initial communication with a consumer in connection with the collection of any debt". The premise was that (a) communications initiated by the consumer in response to the service of a summons and complaint or an invitation from the debt collector are not covered, and (b) the debt collector's responses to the consumer's inquiries about the debt are not covered. The District Court in its Memorandum and Opinion of September 23, 2014 rejected Davidson's contention. "The July 12th Letter was hardly an unsolicited request for information. To the contrary, Plaintiff states a plausible claim that he contacted Davidson only because of the Debt Collection Notice that Davidson included as an exhibit to the Foreclosure Complaint." (App. 289-290).

Further, there is no basis in the statutory text for either of Davidson's propositions. Section 1692g(a) is triggered by "the initial communication with a consumer in connection with the collection of any debt". The statute does not say "the initial communication by the debt collector to the consumer," which would be the case if Congress meant to limit §1692g to communications initiated by the debt collector. "With" is consistent with either party initiating the communication.

36

As was the case here, many communications initiated by the consumer are made in responses to invitations by the debt collector.

Nor is there any statutory exemption for communications by the debt collector in response to questions asked by the consumer.   Again, "communication" is defined in §1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium," which is also consistent with either party initiating the communication.

If the principle of liberal construction in favor of the consumer means anything, it means that artificial limitations should not be added to the statutory language with the effect of limiting the rights of consumers.

In fact, consumers will frequently initiate contact with a debt collector upon learning that the collector is attempting to collect a debt.  Credit monitoring services may alert a consumer that a debt collector has placed a debt on the consumer's credit report.  The Federal Trade Commission advises consumers to obtain annual free copies of each of their credit reports, http://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-con sumers-had- errors-their-credit-reports, which list collection accounts and inquiries from debt collectors.

 Courts have recognized that credit reporting is a means of collecting a debt. "The act of a  debt collector reporting the status of a consumer debt to a credit reporting agency is an activity that would certainly appear to meet the  statute's requirement that the false, deceptive, or misleading  representation or means be "in connection with the collection of a  debt." *Akalwadi v. Risk Management*

37

*Alternatives, Inc.*, 336 F.Supp.2d 492, 503 and n.4 (D. Md. 2004); *accord*, *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a credit card debt to a consumer reporting agency is a "powerful tool designed, in part, to wrench compliance with payment terms from its cardholder").

Consumers may learn that a lawsuit has been filed against them by receiving mail from bankruptcy attorneys. Foreclosure notices are often published in newspapers. Consumers may see a number on a caller ID device and dial it to see who called them.

A rule that the consumer who contacts the debt collector as a result of learning of activities of the debt collector is not entitled to the protections of §1692g or other provisions of the FDCPA which require a "communication with the consumer" (e.g., §§1692(e)(11), 1692c) would eviscerate many of the most important protections the FDCPA affords consumers. Moreover, it injects an irrelevant and extraneous inquiry into FDCPA lawsuits, namely why the consumer happened to contact the debt collector.

The FDCPA expressly recognizes that a consumer may contact the debt collector upon service of a summons and complaint. Thus, §1692(e)(15) prohibits "The false representation or implication that documents are not legal process forms or do not require action by the consumer", i.e., telling the consumer that his appearance is not required.

Section 1692g(a), by stating that "a debt collector shall . . . send the consumer a written notice," indicates that when Congress meant to specify FDCPA depending on who initiated a communication, it did so. It is generally

presumed that Congress acts intentionally and purposely when it includes particular language in one portion of a statute but omits it in another. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993).   Other decisions find §1692g violations when consumers call collection attorneys after being served with a complaint and receive information about payment or court dates, without being provided with the statutorily-prescribed notice.  *O'Brien v. Moores*, 784 F.Supp.2d 1054 (S.D.Ind. 2011) (collection attorney violated §1692g when consumer called number listed on collection complaint and received message stating to bring money to first court date).

There is no good reason why a professional debt collector, upon hearing from a consumer in ***any*** manner, cannot send a §1692g notice within five days. Indeed, it is so likely that a consumer who is named in a lawsuit will communicate with the debt collector in some way (a telephone call, a casual conversation outside a courtroom) that  responsible debt collectors send a §1692g notice without waiting to see if the consumer contacts them.

In short, the July 12, 2013 response letter from Carlin to Davidson(App. 50-52) is a "communication with a consumer" that triggered §1692g, even if the §1692g notice attached as an exhibit to the foreclosure complaint did not.

### 3.   Davidson's Letter of August 9, 2013 is also a "communication with a consumer"

Davidson argued before the District Court that its August 9, 2013 Letter to Mr. Carlin was not a "communication with a consumer."  However, there is no reasoning supporting the notion that Davidson's letter of August 9, 2013 (App. 54-

56), is not a "communication with a consumer in connection with the collection of

any debt".   It obviously provides information about the debt.   Apparently

Davidson does not consider responding to inquiries from the consumer to be a

"communication," even though they involve "the conveying of information

regarding a debt directly or indirectly to any person through any medium," 15

U.S.C. §1692a(2).   They plainly are "communications."   *Pettway v. Harmon Law

Offices, P.C., supra,* 03cv10932, 2005 WL 2365331, *5 (D.Mass., Sept. 27, 2005)

(similar statement covered by the FDCPA).

## V.    DAVIDSON DID NOT COMPLY WITH §1692g

Neither the original validation notice attached to the complaint nor Davidson's letter of August 9, 2013 complied with §1692g.  Both failed to accurately state the amount of the debt, a required disclosure item.  In addition, the letter of August 9, 2013 does not contain any of the other disclosures required by §1692g; the statutory requirement of "a written notice" refers to a singular document and is not met by scattering the mandated disclosures in multiple documents sent over a period of weeks. *Castro v. Green Tree Servicing LLC, supra*, No. 10–CV–7211 (ER), 2013 WL 4105196, *6 (S.D.N.Y., Aug. 14, 2013) ("the express wording of §1692g requires that all of the information listed in the provision be contained within a single communication to the consumer.  Indeed, §1692g clearly refers to a singular 'written notice' when it directs the debt collector to 'send the consumer a written notice.' . . . if defendants' interpretation of the requirements of §1692g was correct, and debt collectors were permitted to send the required information to consumers in multiple, serial written communications, consumers would have no way of knowing when the thirty day period for disputing the debt began to run").

The validation notice attached to the complaint states that "the amount of the debt is stated in the complaint hereto attached."  However, the complaint does not state the present amount of the debt. In Schedule C, it states the original loan amount and the principal balance owing.  This number does not include "interest, taxes, assessments, water rates, insurance premiums, escrow and/or other charges." (Foreclosure complaint, Paragraph "seventh").  A disclosure of part of the debt is

41

not sufficient.  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000) (not sufficient to state that unpaid principal balance of residential mortgage loan was $178,844.65, and that this did not include unspecified accrued but unpaid interest, unpaid late charges, escrow advances, and other charges authorized by loan agreement).

The August 9, 2013 letter from Davidson (App. 54-56) also does not satisfy §1692g.  For one thing, it omits all of the disclosures other than the amount of the debt  – the statute requires "a" notice, not a series of documents.  And while it enclosed a "payoff statement" which stated a "Total Amount Due", it also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued.  You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred."

The "amount of the debt" does not include unearned attorney's fees and collection costs which might be incurred in the future.  *Veach v. Sheeks,* 316 F.3d 690 (7th Cir. 2003) (improper to include "court costs, attorney's fees, or other penalties which may be imposed" by a court because "the amount of the debt provision is designed to inform the debtor (who, remember, has a low level of sophistication) of what the obligation is, not what the final, worst-case scenario could be"); *Spencer v. Hendersen-Webb, Inc.*, 81 F.Supp.2d 582, 591 (D.Md. 1999) (inclusion of fees that have not already been incurred is a violation); *Bernstein v. Howe*, IP 02–192–C–K/H,  2003 WL 1702254, *5 (S.D.Ind., March

31, 2003) ("Whether contractual or statutory, the fact remains that no attorney's fees actually were owed by Bernstein at the time Howe sent his letter. At most, there was the potential for an award of attorney's fees in the future, in the event that First Card incurred attorney's fees as a result of pursuing legal proceedings against Bernstein. *Veach* instructs that a debt collector violates the FDCPA by representing this potential for fees as a part of the debt owed."); *Pettway v. Harmon Law Offices, P.C., supra,* 03cv10932, 2005 WL 2365331, *6 (D.Mass., Sept. 27, 2005) (whether a subsequent communication that lumped together unaccrued with accrued attorney's fees, even with a disclosure, was unfair or deceptive presented a jury question); *Fritz v. Resurgent Capital Services, LP*, No. 11–CV–3300 FB VVP, 2013 WL 3821479, *4 (E.D.N.Y. July 24, 2013) (court costs which have not yet been awarded are not part of the amount of the debt). A requirement in a federal statute that information be disclosed means "*accurate* disclosure." *Gibson v. Bob Watson Chevrolet-GEO, Inc.*, 112 F.3d 283, 285-6 (7th Cir. 1997) (emphasis in original). It is particularly inappropriate to tell a homeowner who is strapped for funds that he or she needs to raise thousands of dollars more than is actually necessary.

Davidson's inclusion of such unearned items is not supported by cases requiring or authorizing a warning that interest and late charges continue to accrue. E.g., *Miller v. McCalla, Raymer, supra.* These decisions require the debt collector to state (accurately) the actual amount of the debt on a date certain – the date of the letter or perhaps one very close to it – but warn the consumer that interest and late charges continue to accrue. Interest and late charges are recurring

and readily calculable. On the other hand, the consumer has no way of assessing a demand for unearned attorney's fees and collection expenses, which are just not owed. *Veach v. Sheeks*, *supra*.

Thus, there is no document which contained all of the disclosures mandated by §1692g, including an accurate statement of the debt.

## VI. CONCLUSION

For the reasons stated, the Court should reverse the dismissal of the complaint and hold that plaintiff's complaint stated a claim.

Respectfully submitted,

S/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

44

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of

Fed.R.App.P.32(a)(7)(B) because:   According to the word count

feature of the program by which it was prepared, this brief contains

11,729 words, excluding the parts of the brief exempted by

Fed.R.App.P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P.

32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6)

because:  This brief was prepared in proportionally spaced typeface

using Word Perfect X6, in Times New Roman, font size 14.

Dated: December 1, 2015

Respectfully submitted,

s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## CERTIFICATE OF SERVICE

I, Tiffany N. Hardy, hereby certify that on December 9, 2015, a copy of the foregoing document was filed electronically using the Court's CM/ECF system.

I further certify that six copies of the foregoing were sent to the Clerk of the Second Circuit Court of Appeals pursuant to Local Rule 31.1 and one copy was sent to the following via U.S. Mail:

**Matthew J. Bizzaro**
L'Abbate, Balkan, Colavita & Contini, L.L.P.
1001 Franklin Avenue
Garden City, New York 11530

**Andrew M. Burns**
Davidson Fink, L.L.P.
28 East Main Street, Suite 1700
Rochester, New York 14614

Respectfully submitted,

s/Tiffany N. Hardy
Tiffany N. Hardy

Daniel A. Edelman
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

46