# 15-3105-cv

## United States Court of Appeals
### for the
## Second Circuit

ANDREW CARLIN, individually and on behalf of a class,

*Plaintiff-Appellant,*

– v. –

DAVIDSON FINK LLP,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

ANDREW M. BURNS, ESQ.
DAVIDSON FINK LLP
28 East Main Street, Suite 1700
Rochester, New York 14614
(585) 784-4800

– and –

MATTHEW J. BIZZARO, ESQ.
L'ABBATE, BALKAN, COLAVITA
  & CONTINI, L.L.P.
1001 Franklin Avenue, 3rd Floor
Garden City, New York 11530
(516) 294-8844

*Attorneys for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

defendant-appellee is a partnership, and no parent, subsidiary, affiliate, or publicly

held corporation owns any stock in the partnership.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

COUNTER-STATEMENT OF THE ISSUES ........................................... 1

COUNTER-STATEMENT OF THE CASE AND FACTS ...................................... 2

    A.    The Foreclosure Action………………………………………………..2

    B.    Carlin's July 12, 2013 Letter…………………………………………4

    C.    Davidson Fink's August 9, 2013 Letter………………………………5

    D.    Carlin's FDCPA Complaint…………………………………………..5

    E.    Davidson Fink's Motion to Dismiss…………………………………8

    F.    The District Court's September 23, 2014
        Memorandum and Order…………………………………………...8

    G.    The District Court's September 30, 2015
        Memorandum and Order…………………………………………...9

SUMMARY OF THE ARGUMENT ..................................................... 11

ARGUMENT ............................................................................. 13

I.    THE DISTRICT COURT CORRECTLY DISMISSED
    CARLIN'S COMPLAINT…………………………………………13

    A.    Standard of Review ……………….............................................13

    B.    The Fair Debt Collection Practices Act……………………………..14

C. The FDCPA Does Not Apply to the Enforcement
of a Security Interest Through Lien Foreclosure Where
a Monetary Judgment is Not Sought Against the Debtor…………...18

1. The Language of the FDCPA……………………………...19

2. The Relief Requested in the Foreclosure Complaint………....25

3. Davidson Fink's § 1692g Notice in the Foreclosure
Complaint Does Not Make It a Debt Collector…………….....31

4. The Cases Carlin Relies on are Distinguishable……………..33

II. THERE ARE ALTERNATIVE REASONS TO AFFIRM THE
DISTRICT COURT'S DISMISSAL OF CARLIN'S COMPLAINT……....48

A. There Was No "Initial Communication" Between
Plaintiff and Davidson Fink…………………………………………48

1. Davidson Fink's Foreclosure Complaint Was Not
an Initial Communication……………………………………48

2. Carlin's July 12, 2013 Letter Was Not an
Initial Communication…………………………………….....52

3. Davidson Fink's August 9, 2013 Letter Was Not
an Initial Communication……………………………………53

B. Davidson Fink Provided Carlin With the
Amount of the Debt………………………………………………….56

CONCLUSION .......................................................................................59

# TABLE OF AUTHORITIES

## Cases

*Abrahmov v. Fidelity Information Corp.*, 2013 U.S. Dist. LEXIS 135910
(E.D.N.Y. June 12, 2012) .......................................................................16

*Aguiar v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 168363
(N.D. Cal. Nov. 26, 2012)......................................................................45

*Allison v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 135791
(W.D. Ky. Sept. 26, 2014) ......................................................................33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................. 13, 14

*Aurora Loan Services, LLC v. Lopa*, 88 A.D.3d 929 (2d Dep't 2011) ..................28

*Barbanti v. Quality Loan Service Corp.*, 2007 U.S. Dist. LEXIS 676
(E.D. Wash. Jan. 3, 2007) ......................................................................24

*Beadle v. Haughey*, 2005 U.S. Dist. 2473 (D.N.H. Feb. 9, 2005)..........................24

*Beggs v. Rossi*, 145 F.3d 511 (2d Cir. 1998) ...........................................18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................... 13, 14

*Birster v. American Home Mortgage Servicing, Inc.*,
481 Fed. Appx. 579 (11th Cir. 2012).......................................................44

*Boyd v. J.E. Robert Co.*, 2010 U.S. Dist. LEXIS 140905
(E.D.N.Y. Mar. 31, 2010) ......................................................................52

*Boyd v. J.E. Robert Co.*, 2012 U.S. Dist. LEXIS 142688
(E.D.N.Y. Oct. 2, 2012) .........................................................................18

*Boyd v. J.E. Robert Co.*, 2013 U.S. Dist. LEXIS 140546
(E.D.N.Y. Sept. 27, 2013)................................................................. passim

*Boyd v. J.E. Robert Co.*, 765 F.3d 123 (2d Cir. 2014)..................................... 18, 19

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ....................................................13

*Caires v. JPMorgan Chase Bank, N.A.*, 880 F. Supp. 2d 288 (D. Conn. 2012)......31

*Calvert v. Alessi & Koenig, LLC*, 2013 U.S. Dist. LEXIS 20017
(D. Nev. Feb. 12, 2013) ..........................................................................................55

*Campbell v. Credit Bureau Services, Inc.*,
655 F. Supp. 2d 732 (E.D. Ky. 2009) .....................................................................53

*Carubia v. Cohen & Slamowitz LLP*, 2015 U.S. Dist. LEXIS 7700
(N.D.N.Y. Jan. 23, 2015) .........................................................................................55

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)................................14

*Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*,
2007 U.S. Dist. LEXIS 67826 (D. Minn. Sept. 12, 2007)................................ 24, 32

*Cocco v. Bank of America Home Loans*,
2012 U.S. Dist. LEXIS 173663 (N.D.N.Y. Dec. 3, 2012)......................................55

*DeMoss v. Peterson, Fram & Bergman*,
2013 U.S. Dist. LEXIS 64328 (D. Minn. May 6, 2013).................................. 23, 32

*Derisme v. Hunt Leibert Jacobson P.C.*,
880 F. Supp. 2d 339 (D. Conn. 2012).....................................................................21

*Derisme v. Hunt Leibert Jacobson, P.C.*,
2013 U.S. Dist. LEXIS 38967 (D. Conn. March 21, 2013)............................ passim

*Deutsche Bank Trust Co. Americas v. Vitellas*, 131 A.D.3d 52 (2d Dep't 2015) ...30

*Doughty v. Holder*, 2014 U.S. Dist. LEXIS 7325 (E.D. Wash. Jan. 21, 2014).......21

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...............................................................13

*Federal Deposit Insurance Corp. v. Four Star Holding Co.*,
178 F.3d 97 (2d Cir. 1999)......................................................................................30

*Fouche´ v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776 (S.D. Miss. 2008) ......32

*Gabriele v. American Home Mortgage Servicing, Inc.*,
503 Fed. Appx. 89 (2d Cir. 2012)................................................................ passim

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010).......................42

*Gizzi v. Hall*, 309 A.D.2d 1140 (3rd Dep't 2003) ...............................................28

*Glazer v. Chase Home Finance LLC*, 704 F.3d 454 (6th Cir. 2013)......................39

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008)......................................................14

*Golubeva v. GC Services Limited Partnership*,
767 F. Supp. 2d 369 (E.D.N.Y. 2010) ...................................................................57

*Gorham-Dimaggio v. Countrywide Home Loans*, Inc.,
2005 U.S. Dist. LEXIS 34237 (N.D.N.Y. Aug. 30, 2005) .....................................52

*Gray v. Four Oak Court Association, Inc.*,
580 F. Supp. 2d 883 (D. Minn. 2008)....................................................................23

*Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015)............................51

*Hooks v. Forman Holt Eliades & Ravin LLC*, 2012 U.S. Dist. LEXIS 115089
(S.D.N.Y. Aug. 12, 2012) ......................................................................................46

*Hooks v. Forman Holt Eliades & Ravin LLC*, 2015 U.S. Dist. LEXIS 122418
(S.D.N.Y. Sept. 14, 2015) ......................................................................................45

*Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002) .................24

*Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85 (2d Cir. 2008) .......15

*Johnson v. Home State Bank*, 501 U.S. 78 (1991)..................................................30

*Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006)...........................................37

*Kamen v. Steven J. Baum, P.C.*, 659 F. Supp. 2d 402 (E.D.N.Y. 2009) ................49

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002)……………………………15

*Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382 (E.D.N.Y. 2011) .............49

*Masson v. Selene Finance LP*, 2013 U.S. Dist. LEXIS 9872
(N.D. Cal. Jan. 24, 2013) .........................................................................45

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
911 F. Supp. 2d 1 (D. Mass. 2012) ...........................................................23

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*,
214 F.3d 872 (7th Cir. 2000) ........................................................... 56, 57

*Natividad v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 74067
(N.D. Cal. May 24, 2013) ................................................................ passim

*Nichols v. Washington Mutual Bank*,
2007 U.S. Dist. LEXIS 85936 (E.D.N.Y. Nov. 21, 2007)......................53

*Oscar v. Professional Claims Bureau, Inc.*,
2012 U.S. Dist. LEXIS 86489 (E.D.N.Y. June 1, 2012) ........................16

*Overton v. Foutty & Foutty, LLP*,
2007 U.S. Dist. LEXIS 61705 (S.D. Ind. Aug. 21, 2007) ......................23

*Pimental v. Wells Fargo Bank, N.A.*,
2015 U.S. Dist. LEXIS 120571 (D.R.I. Sept. 4, 2015)...........................32

*Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir. 2005) ....................34

*Proa v. Wells Fargo Bank, N.A.*,
2013 U.S. Dist. LEXIS 119673 (S.D. Cal. 2013) ...................................22

*Rawlinson v. Law Office of William M. Rudow, LLC*,
460 Fed. Appx. 254 (4th Cir. 2012).......................................................37

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*,
678 F.3d 1211 (11th Cir. 2012) ....................................................... passim

*Rinaldi v. Green Tree Servicing LLC*,
2015 U.S. Dist. LEXIS 127564 (S.D.N.Y. June 8, 2015) ......................42

*Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998)............................34

*Roth v. Citimortgage Inc.*,
2013 U.S. Dist. LEXIS 131861 (E.D.N.Y. Sept. 11, 2013) ............................ 31, 52

*Russell v. Equifax A.R.S.*, 74 F. 3d 30 (2d Cir. 1996)................................................15

*Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992).................................46

*Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010).................. passim

*Speleos v. BAC Home Loans Servicing, L.P.*,
824 F. Supp. 2d 226 (D. Mass. 2011).....................................................................23

*Stamper v. Wilson & Associates, P.L.L.C.*,
2010 U.S. Dist. LEXIS 31770 (E.D. Tenn. Mar. 31, 2010) ............................ 25, 33

*Suquilanda v. Cohen & Slamowitz, LLP*,
2011 U.S. Dist. LEXIS 102727 (S.D.N.Y. Sept. 8, 2011) ......................................16

*United States of America v. Alfano*, 34 F. Supp. 2d 827 (E.D.N.Y. 1999) .............30

*Valle v. Bendett & McHugh, P.C.*,
2015 U.S. Dist. LEXIS 133111 (D. Conn. Sept. 2015)..................................... 49, 52

*Vincent v. The Money Store*, 736 F. 3d 80 (2d Cir. 2013) .......................................47

*Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323 (6th Cir. 2013) .............38

*Walsh v. Law Offices of Howard Lee Schiff, P.C.*,
2012 U.S. Dist. LEXIS 136408 (D. Conn. Sept. 24, 2012).....................................54

*Williams v. OSI Educational Services, Inc.*, 505 F.3d 675 (7th Cir. 2007).............57

*Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4th Cir. 2006)…………….35

## Statutes and Rules

11 U.S.C. § 524 ............................................................................30

12 U.S.C. § 1692…………………………………………………..5, 51

15 U.S.C. § 1692a(5) ....................................................................16

15 U.S.C. § 1692a(6) ............................................................ passim

15 U.S.C. § 1692e .................................................................. passim

15 U.S.C. § 1692f ..........................................................................18

15 U.S.C. § 1692f(6) ............................................................. passim

15 U.S.C. § 1692g ................................................................. passim

15 U.S.C. § 1692g(a) ............................................................ passim

15 U.S.C. § 1692g(a)(1) ........................................................ passim

15 U.S.C. § 1692g(b) ......................................................................8

15 U.S.C. § 1692g(d)…………………………………………...9, 50

15 U.S.C. § 1692i(a)(1) ........................................................... 23, 41

Fed. R. Civ. P. 12(b)(6)………………………………………...8, 13

Fed. R. Civ. P. 23(a)…………………………………………………..7

Fed. R. Civ. P. 23(b)(3) ……………………………………………7

NY RPAPL § 711 ...........................................................................34

NY RPAPL § 1303………………………………………………4

NY RPAPL § 1304………………………………………………4

NY RPAPL § 1371 ................................................................. 3, 12, 28

NY RPAPL § 1371(2) ....................................................................... 29

NY RPAPL § 1371(3) ....................................................................... 29

NY UCC § 1-201(37) ....................................................................... 16

53 Pa. S. § 7101 ............................................................................... 34

## COUNTER-STATEMENT OF THE ISSUES

1.      Did the district court correctly hold that Davidson Fink was not acting as a debt collector when it filed a foreclosure complaint against Andrew Carlin, and consistent with New York law, did not sue on the note, did not seek monetary relief, did not seek a money or deficiency judgment or any other *in personam* relief against Carlin, and only sought to enforce the lender's security interest?

2.      In the alternative, are there other reasons why the district court's dismissal of the complaint should be affirmed, including there was no "initial communication" pursuant to 15 U.S.C. § 1692g(a), and Davidson Fink properly provided Carlin with the "amount of the debt" pursuant to 15 U.S.C. § 1692g(b)?

## COUNTER-STATEMENT OF THE CASE AND FACTS

This is an appeal of the district court's September 30, 2015 Memorandum and Order dismissing the complaint of Andrew Carlin ("Carlin") pursuant to Fed. R. Civ. P. 12(b)(6).

A.    The Foreclosure Action

Davidson Fink is a law firm based in Rochester, New York.  (Appendix "App." 2).

On June 24, 2013, Davidson Fink filed a Summons and Notice and Verified Complaint ("Foreclosure Complaint") against Carlin on behalf of Deutsche Bank National Trust Company, as Trustee for the Holders of Morgan Stanley ABS Capital I Inc., Trust 2005-HE3, Mortgage Pass-Through Certificates, Series 2005-HE3 ("Lender"), in the Supreme Court, Nassau County, Index No. 7648/2013. ("Foreclosure Action").  (App. 11-56, 64-101).  Davidson Fink attached and included as part of the Foreclosure Complaint a copy of a "Notice Required by the Fair Debt Collection Practices Act."  (App. 21, 74).

By filing the Foreclosure Complaint, Davidson Fink sought to enforce the Lender's security interest in real property located at 6 15th Avenue, Sea Cliff, New York ("Premises") as well as the costs and reasonable attorneys' fees incurred directly from and solely because of the Foreclosure Action (if provided for in the note/loan agreement or mortgage).  (App. 17-19, 70-72).

Contrary to what Carlin repeatedly and erroneously alleges in his brief, Davidson Fink's Foreclosure Complaint does **not** seek monetary damages, a money judgment, or a deficiency judgment against Carlin. (App. 17-19, 70-72). Rather, paragraph 6 of the prayer for relief (App. 6, 71) requests as follows:

> That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s) referred to in paragraph FOURTH of this Complaint for any deficiency which may remain after applying all of such moneys so applicable thereto, **except that this shall not apply to any defendant who has been discharged in bankruptcy from the subject debt;**

(emphasis in original). By this paragraph, Davidson Fink only seeks to preserve the Lender's right to seek a deficiency judgment pursuant to, and consistent with, the requirements of New York's Real Property Actions and Procedure Law ("RPAPL") § 1371. Following New York law, when Davidson Fink commenced the Foreclosure Action, it did not sue on the note, did not seek monetary relief, did not seek a money or deficiency judgment or any other *in personam* relief against Carlin, and only sought to enforce the Lender's security interest by foreclosing on the premises.

-3-

Carlin retained an attorney in the Foreclosure Action, and on or about July

23, 2013, Carlin, through his attorney, served on Davidson Fink an answer

containing eleven affirmative defenses and a first set of interrogatories.  (App. 103-

111, 112-113, 115-135, 136-137).  In his answer, Carlin admitted he executed a

promissory note and mortgage relating to Premises.  (App. 103-104, ¶¶ 2 -3).

Carlin's 37 interrogatories (not including sub-parts) were detailed and

comprehensive, and sought information regarding:  the mortgage, note, notice of

default, owners of the mortgage and note, notices, assignments, mortgage closing,

"documents setting forth the manner in which the purported debt owed by

Defendant was calculated," servicing agents, powers of attorneys, insurance,

servicing agreements, retainer agreement between Davidson Fink and the Lender,

disbursements the Lender intended to charge Carlin, payments and advances the

Lender made as a result of Carlin's default, charges and expenses charged to the

mortgage or note, and correspondence sent to Carlin, including FDCPA notices,

notices of default, RPAPL § 1303 notices, and RPAPL § 1304 notices.  (App. 122-

134).

B.  <u>Carlin's July 12, 2013 Letter</u>

Carlin sent a letter to Davidson Fink dated July 12, 2013 in which Carlin

informed Davidson Fink that he disputed the debt, disputed the name of the

Lender, requested verification of the name of the Lender and the amount of the

debt, and requested the name and address of the original creditor.  (App. 50-52, 141-143).

      C.    <u>Davidson Fink's August 9, 2013 Letter</u>

      Davidson Fink responded to Carlin by letter dated August 9, 2013 in which Davidson Fink provided information and copies of documents to Carlin, including copies of the endorsed note, mortgage, assignments of mortgage, payment history, and payoff statement dated July 31, 2013.  (App. 145-192).  The payoff statement specifically stated the "Total Amount Due" was $205,281.79 and was good through August 14, 2013.  (App. 55-56, 151-152).  The payoff statement also explained how interest was calculated on the principal balance, and further informed Carlin that because the Total Amount Due "may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to [August 14, 2013], but which are not yet due as of the date this Payoff Statement is issued [July 31, 2013]," Carlin would receive a refund if he paid the Total Amount Due and "those anticipated fees, expenses, or payments have not been incurred."  (App. 55, 151).

      D.    <u>Carlin's FDCPA Complaint</u>

      On October 31, 2013, Carlin sued Davidson Fink for an alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") (App. 2-56).

The factual allegations in Carlin's complaint are sparse.  (App. 3-6).  Carlin alleges Davidson Fink is attempting to collect a residential mortgage loan obtained by Carlin for personal, family, or household purposes, and the loan was in default when Davidson Fink first became involved with it.  (App. 3, ¶¶ 11-12).

Carlin alleges Davidson Fink filed a foreclosure action against Carlin in Nassau County, New York on behalf of the Lender on June 24, 2013, and attempted to provide a 15 U.S.C. § 1692g notice as an attachment to the Foreclosure Complaint.  (App. 3, ¶¶ 13-14).  Carlin admits he did not receive any letter or other communication from Davidson Fink prior to the filing of the Foreclosure Complaint, and Carlin does not believe Davidson Fink sent any.  (App. 4, ¶ 16).

Carlin alleges the Foreclosure Complaint failed to state the present amount of the debt, but rather attached a "Schedule C" that listed the original loan amount and the principal balance owing.  (App. 5, ¶ 19).  Carlin further alleges the Foreclosure Complaint claims unspecified interest, taxes, assessment, water rates, insurance premiums, escrow "and/or other charges."  (App. 5, ¶ 19).

Carlin alleges he sent Davidson Fink a letter dated July 12, 2013 disputing the debt, and by letter dated August 9, 2013, Davidson Fink provided additional information about the debt.  (App. 5, ¶¶ 20, 21).  Carlin further alleges Davidson Fink's August 9, 2013 letter enclosed a payoff statement that stated an amount of

the debt, but also stated that "the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued." (App. 5, ¶ 22). Carlin further alleges that as a result, Davidson Fink did not provide the "amount of the debt" as required by 15 U.S.C. § 1692g(a)(1). (App. 5-6, ¶ 23).

Carlin alleges it was the policy and practice of Davidson Fink to attempt to comply with 15 U.S.C. § 1692g by "[a]ttaching the § 1692g notice to the complaint" which did not contain the "amount of the debt" and providing a "pay-off statement" if the consumer requested the amount of the debt, and the payoff statement included unaccrued charges and thus did not state the "amount of the debt." (App. 6, ¶ 24).

Carlin purported to bring his action on behalf of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. (App. 6, ¶ 28). Carlin filed a motion for class certification a few days after filing his complaint.

Carlin's sole claim alleges Davidson Fink violated 15 U.S.C. § 1692g(a)(1) because it failed to furnish Carlin with "a statement of the amount of the debt." (App. 6, ¶ 26).

Carlin does not allege in the Foreclosure Complaint that Davidson Fink sued on a note, sought monetary damages, sought a money judgment, sought a deficiency judgment, or sought any other *in personam* relief against Carlin.

E.     Davidson Fink's Motion to Dismiss

On December 19, 2013, Davidson Fink moved to dismiss the complaint pursuant to Rule 12(b)(6) because:  (i) the FDCPA does not apply to the enforcement of a security interest through lien foreclosure; (ii) Davidson Fink did not act as a "debt collector" engaged in "the collection of any debt" pursuant to 15 U.S.C. § 1692g; (iii) Davidson Fink's Foreclosure Complaint did not constitute an "initial communication"; (iv) 15 U.S.C. § 1692g(a) was not triggered, and thus Carlin could not establish that he notified Davidson Fink "in writing within the thirty-day period" to be entitled to debt verification pursuant to 15 U.S.C. § 1692g(b); (v) Davidson Fink had no legal obligation to provide any information regarding the debt to Carlin; and (vi) Davidson Fink voluntarily and fully complied with the requirements of 15 U.S.C. § 1692g(a)(1) by providing Carlin with "the amount of the debt."  (App. 58).

F.     The District Court's September 23, 2014 Memorandum and Order

In its September 23, 2014 Memorandum and Order ("Initial Decision"), the district court denied without prejudice Carlin's motion for class certification and denied Davidson Fink's motion to dismiss.  (App. 270-298).

-8-

The district court determined the Foreclosure Complaint, and all of its exhibits, was not an initial communication because 15 U.S.C. § 1692g(d) explicitly provides that a communication in the form of an initial pleading in a civil action is not as an initial communication for purposes of 15 U.S.C. § 1692g(a).  (App. 285).  However, the district court found Carlin "plausibly alleged" his July 12, 2013 letter and Davidson Fink's August 9, 2013 letter were initial communications.  (App. 287).

Relying on the Eleventh Circuit's decision in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), the district court concluded Carlin alleged facts that suggested Davidson Fink was engaged in debt collection notwithstanding that Davidson Fink also filed a foreclosure action.  (App. 292-293).  Finally, the district court determined that Carlin plausibly alleged Davidson Fink failed to comply with 15 U.S.C. § 1692g(a).  (App. 297).  On October 7, 2014, Davidson Fink filed a motion for reconsideration of the Initial Decision.  (App. 300).

G.    The District Court's September 30, 2015 Memorandum and Order

In its September 30, 2015 Memorandum and Order ("Reconsideration Decision") (App 303-311), the district court granted reconsideration, vacated its prior order denying dismissal, and granted Davidson Fink's motion to dismiss the complaint. (App 304).  The district court acknowledged it erred in initially

concluding that Davidson Fink was acting as a debt collector because it overlooked an important factual distinction in *Reese*. (App. 309-310).

In *Reese*, the law firm for the lender mailed a collection letter to the debtors that informed them that the note securing their security deed was in default for non-payment and demanded full and immediate payment of all amounts due under the note. *Reese*, 678 F.3d at 1214. The law firm further advised the debtors in the letter that the lender intended to enforce the provisions of the note and security deed and unless they paid all amounts due under the note and security deed within ten days, the law firm would conduct a foreclosure sale of the real property. *Id*. The court in *Reese* determined that even if the law firm intended to give the debtors notice of the foreclosure in its letter, it also demanded payment on the underlying debt. *Id*. Thus, even though the letter related to the enforcement of a security interest, it also related to the collection of a debt within the meaning of 15 U.S.C. § 1692e. *Id.* at 1217.

The district court recognized in its Reconsideration Decision that *Reese* was factually distinguishable from the facts alleged by Carlin because the law firm's letter in *Reese* specifically demanded payment from the debtors of all amounts due under the note, and the law firm sent the letter prior to the commencement of the Foreclosure Action. (App. 309-310). Carlin did not allege, nor could he, that

Davidson Fink made a demand for payment of Carlin's note prior to commencing the Foreclosure Action or in the Foreclosure Complaint.

The district court recognized that by overlooking the factual distinction in *Reese*, it deviated from the majority rule that the enforcement of a security interest through a foreclosure action that does not seek a monetary judgment against the debtor is not debt collection for purposes of the FDCPA. (App. 310). This is because the holder of a note and mortgage in New York may proceed at law to recover on the note or in equity to foreclose on the mortgage, but must elect one of these alternative remedies. (App. 310). The district court dismissed the complaint with prejudice because Davidson Fink did not engage debt collection as a matter of law. (App. 310-311).

The district court entered judgment in favor of Davidson Fink on September 30, 2015. (App. 313). Carlin filed his notice of appeal on October 2, 2015. (App. 315-328).

## SUMMARY OF THE ARGUMENT

Carlin alleges Davidson Fink violated 15 U.S.C. § 1692g(a)(1). For Carlin to prevail, he must establish Davidson Fink was acting as a "debt collector" when it filed the Foreclosure Complaint on behalf of the Lender seeking to enforce the Lender's security interest in the Premises.

-11-

A law firm that files a judicial foreclosure action to enforce a security interest in property but does not seek a monetary judgment or deficiency judgment against the debtor is not engaging in debt collection. Except for claims brought under 15 U.S.C. § 1692f(6), the FDCPA does not apply to enforcers of security interests.

Thus, if a law firm's foreclosure complaint does not sue on a note, does not seek monetary relief, and does not seek a money or deficiency judgment or any other *in personam* relief against the debtor, the law firm's action enforcing the security interest in the property is not debt collection under the FDCPA.

While Carlin resorts to mischaracterizing the relief Davidson Fink requested in the Foreclosure Complaint, Davidson Fink's Foreclosure Complaint does **not** seek monetary damages, a money judgment, or a deficiency judgment against Carlin. Rather, in the Foreclosure Complaint, Davidson Fink only sought to preserve the Lender's right to seek a deficiency judgment pursuant to, and consistent with, the requirements of New York's Real Property Actions and Procedure Law § 1371. Because Davidson Fink did not act as a "debt collector" engaged in "the collection of any debt" pursuant to 15 U.S.C. § 1692g, the FDCPA does not apply.

However, assuming *arguendo* that the FDCPA applies, Carlin cannot establish a claim for relief pursuant to 15 U.S.C. § 1692g(a)(1) because no "initial

-12-

communication" exists between Davidson Fink and Carlin, and Davidson Fink

voluntarily and sufficiently provided the "amount of the debt" to Carlin.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DISMISSED CARLIN'S COMPLAINT

### A. <u>Standard of Review</u>

This Court reviews *de novo* a district court's grant of a motion to dismiss

pursuant to Rule 12(b)(6). *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95

(2d Cir. 2010).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) requires a plaintiff

to plead sufficient facts "to state a claim for relief that is plausible on its face."

The complaint must provide the defendant with "fair notice of what the . . . claim is

and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

*See also Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).

A complaint that offers "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (*quoting Twombly*, 550 U.S. at 555). Likewise, a complaint is

insufficient if it "tenders 'naked assertion[s]' devoid of further factual

enhancement.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). The

complaint's "[f]actual allegations must be enough to raise a right to relief above

the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, the court is to construe liberally the claims, accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 554 U.S. 930 (2008) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). However, this standard "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

B.     The Fair Debt Collection Practices Act

Carlin's sole claim alleges Davidson Fink violated 15 U.S.C. § 1692g(a)(1), which provides:

> § 1692g. Validation of debts
>
> (a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> > (1) the amount of the debt;

-14-

Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors," *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). *See* 15 U.S.C. § 1692e.

Although Congress painted with a "broad brush," the FDCPA's protection does not extend to every bizarre or idiosyncratic interpretation of a collection communication, and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations. *Gabriele v. American Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 94 (2d Cir. 2012).

The FDCPA also ensures debt collectors who refrain from improper practices are not competitively disadvantaged. *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "[W]hen a debtor is … protected by the court system and its officers," the FDCPA's protective purposes typically are not implicated. *Id.; see also Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010). Similarly, if an attorney interposes herself as an intermediary between a debt collector and a consumer, courts assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's deceptive or harassing behavior. *Kropelnicki*, 290 F.3d at 127.

For Carlin to establish Davidson Fink violated the FDCPA, he must show:
(1) he was a consumer; (2) Davidson Fink acted as a "debt collector" under the
FDCPA; and (3) Davidson Fink committed some act or omission in violation of the
FDCPA. *See Abrahmov v. Fidelity Information Corp.*, 2013 U.S. Dist. LEXIS
135910, at *8 (E.D.N.Y. June 12, 2012); *Suquilanda v. Cohen & Slamowitz, LLP*,
2011 U.S. Dist. LEXIS 102727, at *10 (S.D.N.Y. Sept. 8, 2011).  Carlin must also
allege a "debt" as defined by the FDCPA.  *Oscar v. Professional Claims Bureau,
Inc.*, 2012 U.S. Dist. LEXIS 86489, at *7 (E.D.N.Y. June 1, 2012).  Thus, in the
absence of a "debt" or a "debt collector", no claim exists under the FDCPA.

The FDCPA defines a "debt" as "any obligation or alleged obligation of a
consumer to pay money arising out of a transaction in which the money, property,
insurance, or services which are the subject to the transaction are primarily for
personal, family, or household purposes, whether or not such obligation has been
reduced to judgment."  15 U.S.C. § 1692a(5).  Under the plain language of this
definition, "debt" does not mean or include a "security interest", which is "an
interest in personal property or fixtures which secures payment or performance of
an obligation."  New York Uniform Commercial Code § 1-201(37).

The FDCPA defines a "debt collector" as "any person who uses any
instrumentality of interstate commerce or the mails in any business, the principal
purpose of which is the collection of any debts, or who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA further defines "debt collector" by stating "[f]or the purpose of [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."

15 U.S.C. § 1692f provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> * * *

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

>> (A)  there is no present right to possession of the property claimed as collateral through an enforceable security interest;

>> (B)  there is no present intention to take possession of the property; or

>> (C)  the property is exempt by law from such dispossession or disablement.

Carlin does not allege Davidson Fink violated 15 U.S.C. § 1692f(6). Rather, Carlin alleges Davidson Fink violated 15 U.S.C. § 1692g(a)(1). Thus, to prevail, Carlin must establish Davidson Fink was acting as a "debt collector" when it filed

-17-

the Foreclosure Complaint on behalf of the Lender seeking to enforce the Lender's security interest in the Premises.

C.  The FDCPA Does Not Apply to the Enforcement of a Security Interest Through Lien Foreclosure Where a Monetary Judgment is Not Sought Against the Debtor

This case presents the question not addressed by this Court in its decision in *Boyd v. J.E. Robert Co.*, 765 F.3d 123 (2d Cir. 2014), in which the Court affirmed the decisions in *Boyd v. J.E. Robert Co.*, 2012 U.S. Dist. LEXIS 142688 (E.D.N.Y. Oct. 2, 2012) ("*Boyd I*"), and *Boyd v. J.E. Robert Co.*, 2013 U.S. Dist. LEXIS 140546 (E.D.N.Y. Sept. 27, 2013) ("*Boyd II*"), that liens for mandatory water and sewer charges imposed by New York City as an incident to property ownership were not subject to the FDCPA because they did not involve a "debt" as defined in the FDCPA. *Boyd*, 765 F.3d at 126 ("[T]he charges at issue are best treated as akin to the municipal property taxes discussed in *Beggs* [*v. Rossi*, 145 F.3d 511 (2d Cir. 1998)] and, accordingly, outside the scope of the FDCPA").

The district court in *Boyd I* and *Boyd II* also held that judicial foreclosure actions that do not seek monetary or deficiency judgments were not debt collection activities under 15 U.S.C. §§ 1692e and 1692f. *Boyd I*, 2012 U.S. Dist. LEXIS 142688, at *32-52; *Boyd II*, 2013 U.S. Dist. LEXIS 140546, at *12-26. Because this Court affirmed the determination of the district court in *Boyd I* and *Boyd II* that the sewer and water liens at issue did not constitute "debt" under the FDCPA, the

-18-

Court did not address the district court's other finding that the FDCPA does not apply to the enforcement of security interests against property. *Boyd*, 765 F.3d 123, 125, n. 3. This case squarely presents this issue because the district court dismissed Carlin's complaint by following the "majority rule" that "the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." (App. 310) (*quoting Boyd II*, 2013 U.S. Dist. LEXIS 140546, at *29).

There are two principal reasons why a majority of courts have determined the enforcement of a security interest through a foreclosure action that does not seek a monetary judgment against the debtor is not debt collection for purposes of the FDCPA.

### 1. The Language of the FDCPA

First, these courts base their conclusion on the language in the FDCPA itself. *See*, *e.g.*, *Boyd II*, 2013 U.S. Dist. LEXIS 140546, at *40 ("The FDCPA by its own terms contemplates a distinction between the 'collection of any debts' and 'the enforcement of security interests.' 15 U.S.C. § 1692a(6).").

The FDCPA does not define "the collection of any debt." However, courts have recognized the FDCPA's definition of a "debt collector" reflects Congress' intent to distinguish between "the collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6).

-19-

The first sentence of 15 U.S.C. § 1692a(6) defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The third sentence of § 1692a(6) provides that for the purpose of § 1692f(6), a debt collector is also "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the **enforcement of security interests**." (emphasis added).

Thus, if a defendant meets the definition in the first sentence, it is a debt collector for purposes of the entire FDCPA.  However, if a defendant only meets the definition in the third sentence, its debt collector status is limited to § 1692f(6).

In examining the language of the FDCPA, courts have recognized that if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts.[1]  *See Boyd II*, 2013 U.S. Dist. LEXIS 140546, at *40, 36-37 ("[t]he FDCPA

---

[1] "It is well-settled that courts should avoid statutory interpretations that render provisions superfluous:  'It is our duty to give effect, if possible, to every clause and word of a statute.'"  *State Street Bank & Trust Co. v. Salovaara,* 326 F.2d 130,

-20-

by its own terms contemplates a distinction between the 'collection of any debts' and 'the enforcement of security interests.' 15 U.S.C. § 1692a(6)", and "construing the enforcement of security interests as debt collection under the FDCPA renders superfluous some of the statutory text."); *see also Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 361 (D. Conn. 2012) ("Since Section 1692a(6) expressly includes enforcers of security interests in reference to Section 1692f(6), courts have held that an enforcer of security interest is therefore not a debt collector for purposes of other sections of the FDCPA," and the court "is likewise persuaded that the legislative history, plain meaning, statutory construction, and the FTC's guidance support the conclusion that an enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA. Other courts have reached this same conclusion for the same reasons."), *motion to amend or modify denied*, *Derisme v. Hunt Leibert Jacobson, P.C.*, 2013 U.S. Dist. LEXIS 38967 (D. Conn. March 21, 2013).

Indeed, courts throughout the United States have recognized that except for claims brought under 15 U.S.C. § 1692f(6), the FDCPA does not apply to enforcers of security interests. *See*, *e.g.*, *Doughty v. Holder*, 2014 U.S. Dist. LEXIS 7325, at *8, 18 (E.D. Wash. Jan. 21, 2014) ("So long as the foreclosure

---

139 (2d Cir. 2003) (*quoting Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also United States v. Siraj*, 533 F.3d 99, 101 (2d Cir. 2008).

proceedings, be they non-judicial or judicial, involve no more than mere enforcement of security interests, the FDCPA does not apply. … Defendants did not seek personal money judgments against the Plaintiffs. Instead the Defendants sought a foreclosure judgment against the Plaintiffs which required establishment of the monetary amount due and owing on the underlying promissory note so as to establish the bid parameters for a foreclosure sale unless the amount due and owing was tendered immediately."); *Proa v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 119673, at \*14, n.2 (S.D. Cal. 2013) ("[T]he acts Defendants took to enforce a security interest do not qualify as debt collection within the scope of § 1692e. … Section 1692a(6) specifies that *for the purpose of § 1692f(6)*, the term debt collector 'also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests,' meaning that such a person does not fall within the scope of the *general* definition of a debt collector. Therefore, the acts Defendants took to enforce a security interests do not qualify as debt collection with the scope of § 1692e.") (emphasis in original); *Natividad v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 74067, at \*23 (N. D. Cal. May 24, 2013) ("Thus, a person regularly or principally engaged in the enforcement of secured interests is not a 'debt collector' under the Act. To hold otherwise would render the third sentence of section 1692a(6) meaningless: there is no need to 'also'

include a person principally engaged in the enforcement of secured interests as a

'debt collector' for the purpose of section 1692f(6) of the Act if the enforcement of

secured interests qualifies as debt collection."); *McDermott v. Marcus, Errico,*

*Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 52 (D. Mass. 2012) (The purposeful

inclusion of an enforcer of a security interest in one section of the FDCPA implies

the term "debt collector" does not include the enforcer of a security interest for any

other section of the FDCPA); *DeMoss v. Peterson, Fram & Bergman*, 2013 U.S.

Dist. LEXIS 64328, at *6 (D. Minn. May 6, 2013) ("Relying on this distinction

[between 'the collection of any debts' and 'the enforcement of security interests'],

this court has previously held that foreclosure activities do not constitute debt

collection under the FDCPA."); *Speleos v. BAC Home Loans Servicing, L.P.*, 824

F. Supp. 2d 226, 232 (D. Mass. 2011) ("The statute itself, however, distinguishes

debt collection from security interest enforcement in its definition of a 'debt

collector.'"); *Overton v. Foutty & Foutty, LLP*, 2007 U.S. Dist. LEXIS 61705, at

*17 (S.D. Ind. Aug. 21, 2007) ("If a person invokes judicial remedies *only* to

enforce the security interest in property, then the effort is not subject to the FDCPA

(other than § 1692f(6) and § 1692i(a)) (emphasis in original); *Gray v. Four Oak*

*Court Association, Inc*., 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("If a party

satisfies only the third sentence [of § 1692a(6)], its debt collector status is limited

to § 1692f(6).  However, if the enforcement of a security interest was synonymous

with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts. Therefore, to avoid this result, the court determines that the enforcement of a security interest, including a lien foreclosure, does not constitute the 'collection of any debt.'"); *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, 2007 U.S. Dist. LEXIS 67826, at *12-13 (D. Minn. Sept. 12, 2007) ("Because Congress purposefully made a distinction between a debt collector and an enforcer of a security interest, the Court concludes that an enforcer of a security interest, such as a law firm foreclosing on mortgages of real property (like SNZ here), falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)"); *Barbanti v. Quality Loan Service Corp.*, 2007 U.S. Dist. LEXIS 676, at *8 (E.D. Wash. Jan. 3, 2007) ("[T]he inclusion of an enforcer of a security interest in § 1692f(6) implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA."); *Beadle v. Haughey*, 2005 U.S. Dist. 2473, at *9 (D.N.H. Feb. 9, 2005) ("In short, it seems very well established that foreclosing on a mortgage does not constitute debt-collecting activity under the FDCPA."); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. ...

-24-

Payment of funds is not the object of the foreclosure action.  Rather, the lender is

foreclosing its interest in the property. …  Foreclosure by the trustee is not the

enforcement of the obligation because it is not an attempt to collect funds from the

debtor."); *Stamper v. Wilson & Associates, P.L.L.C.*, 2010 U.S. Dist. LEXIS

31770, at*18 (E.D. Tenn. Mar. 31, 2010) ("The statute's definition of debt

collector clearly reflects Congress' intent to distinguish between debt collection

activities and the enforcement of security interests.").

> 2.    The Relief Requested in the Foreclosure Complaint

In addition to recognizing that an enforcer of a security interest is only

subject to § 1692f(6) and not any other section of the FDCPA, the decisions cited

above also recognize that enforcing a security interest through a foreclosure action

is not debt collection for purposes of the FDCPA where the foreclosure complaint

does not seek a monetary judgment against the debtor.

In a transparent attempt to avoid these decisions, Carlin resorts to

mischaracterizing the relief Davidson Fink requested in the Foreclosure Complaint

by repeatedly and erroneously alleging Davidson Fink seeks a deficiency judgment

against Carlin, and this constitutes debt collection.  The Court should reject

Carlin's effort to mischaracterization the relief requested in the Foreclosure

Complaint.

In *Derisme*, plaintiff alleged a law firm violated sections 1692g and 1692e of the FDCPA in connection with a foreclosure action in Connecticut. *Derisme*, 880 F. Supp. 2d at 358. The first question addressed by the district court was whether the law firm was attempting to collect a debt when it filed the foreclosure action. The district court concluded when the law firm "filed the foreclosure action, it was not seeking a money judgment on behalf of its client but was instead seeking to enforce the security interest of its client" even though the foreclosure complaint also contained a claim for a deficiency judgment. *Derisme*, 880 F. Supp. 2d at 359. This was because "[a]lthough deficiency proceedings are part of the main foreclosure suit they are separately brought by written motion and if not timely made will be lost." *Derisme*, 880 F. Supp. 2d at 360. The Court further explained:

> Moreover, in the event that the value of the subject property was more than the debt owed, there would be no deficiency and thus the mortgagee would not be entitled to a deficiency judgment regardless of whether the mortgagee made a claim in the foreclosure complaint for a deficiency judgment. Although the deficiency proceeding is considered a part of a foreclosure suit, it is not initiated until after the mortgagee files a motion in accordance with the requirements of § 49-14 including the implicit requirement that the plaintiff provide the court with sufficient evidence to demonstrate that she is entitled to a deficiency judgment. By including a claim for a deficiency judgment in the foreclosure complaint, a mortgagee merely preserves its ability to initiate deficiency proceedings in the foreclosure action at a later time should the mortgagee choose to do so. The inherent implication of the statutory regime under § 49-14 and § 49-1 is that until a timely filed motion for deficiency judgment pursuant to § 49-14 is made a foreclosure

-26-

action is solely an action in equity to enforce a security interest. Once a timely motion for a deficiency judgment has been made pursuant to § 49-14 that will have the effect of converting the proceeding to an action at law for money damages ancillary to the initial action in equity for foreclosure to effectuate the full and complete resolution of the issues between the mortgagor and the mortgagee in the most effective manner.

Here, although the foreclosure complaint contained a claim for a deficiency judgment, to date no timely motion seeking a deficiency judgment has been made as required under § 49-14 in the foreclosure action. Since Hunt Leibert has not initiated deficiency proceedings under Connecticut's statutory regime the foreclosure action is solely an action in equity seeking the remedy of foreclosure and was never converted into an action at law seeking money damages. Therefore, Hunt Leibert has sought only to enforce its client's security interest in the foreclosure action and has not yet sought a money judgment. **At most, Hunt Leibert has preserved its client's ability to seek a deficiency judgment at a later time by including the claim in the complaint. However, since Hunt Leibert has not initiated deficiency proceedings pursuant to § 49-14 on its clients behalf, it has not attempted to collect a debt in connection with the foreclosure action but instead has only sought to enforce its client's security interest.**

*Derisme*, 880 F. Supp. 2d at 360-361 (internal citations and quotations omitted) (emphasis added). *See also Derisme*, 2013 U.S. Dist. LEXIS 38967, at *5 (D. Conn. March 21, 2013) (court denied plaintiff's petition to alter or amend order, noting it previously concluded "the filing of a state foreclosure action did not constitute the type of abusive debt collection practices proscribed by the FDCPA" and its conclusion "was recently reaffirmed by the Second Circuit in which it held that '[a]s we have recognized in past decisions, the protective purposes of the

-27-

FDCPA typically are not implicated when a debtor is instead protected by the court system and its officers.'") (*citing Gabriele v. American Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 96 n.1 (2d Cir. 2012), and *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010)).

Similar to the foreclosure complaint in *Derisime*, the Foreclosure Complaint contains a provision in the prayer for relief that seeks to preserve the Lender's right to seek a deficiency judgment later in the proceeding, consistent with RPAPL § 1371, *et seq.* (App. 6, 71, ¶ 6). Indeed, all paragraph 6 seeks for relief is "if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report …." (App. 6, 71, ¶ 6).

As the district court recognized in its Reconsideration Decision, the fatal flaw in Carlin's argument is that under New York Law, "[t]he holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, **but must only elect one of these alternate remedies**." *Gizzi v. Hall*, 309 A.D.2d 1140, 1141 (3rd Dep't 2003) (emphasis added). *See also Aurora Loan Services, LLC v. Lopa*, 88 A.D.3d 929, 930 (2d Dep't 2011) ("[A] prayer for a deficiency in a foreclosure complaint does not constitute a separate action for a money judgment in violation of the election of remedies. Indeed,

RPAPL § 1371(2) permits a plaintiff in a foreclosure action to make a motion *in the action* for leave to enter a deficiency judgment.") (internal citation omitted) (emphasis in original); RPAPL 1371(2).

By proceeding to foreclosure on the property, the Lender elected its remedy to enforce its security interest, and Davidson Fink could not (and did not) seek to collect the amount Carlin owed the Lender pursuant to Carlin's note when Davidson Fink filed the Foreclosure Complaint.

Like the statutory framework in Connecticut at issue in *Derisme*, in New York, the mortgage holder may make a motion for leave to enter a deficiency judgment on notice served personally (or in such other manner as the court may direct) on the party against whom the judgment is sought or his attorney. RPAPL § 1371(2). If a motion for a deficiency judgment is not timely made (i.e., within 90 days after the date of the consummation of the sale by delivery of the deed of conveyance to the purchaser, and simultaneously with the making of a motion for an order confirming the sale), "the proceeds of the sale regardless of the amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." RPAPL § 1371(3).

Fundamental to Carlin's argument is his incorrect assumption that there always is a debt to collect through foreclosure. If foreclosing on real property is the act of debt collection by a debt collector (rather than the enforcement of a

security interest in real property by an enforcer of a security interest), then there must always be a debt to collect. However, in a bankruptcy proceeding, the debtor's discharge extinguishes the debtor's *in personam* liability on the note secured by a mortgage, but the secured creditor's right to foreclose on the mortgage survives and passes through the bankruptcy. *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991); *United States of America v. Alfano*, 34 F. Supp. 2d 827, 838 (E.D.N.Y. 1999) ("[D]ischarge does not affect liability *in rem* and prepetition liens remain enforceable after discharge."); *Deutsche Bank Trust Co. Americas v. Vitellas*, 131 A.D.3d 52, 63 (2d Dep't 2015) ("Although a bankruptcy discharge extinguishes one mode of enforcing a note -- namely, an action against the debtor in personam, it leaves intact another -- namely, an action against the debtor in rem. … Thus, 'even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a right to repayment in the form of its right to the proceeds from the sale of the debtor's property.'") (*quoting Johnson*, 501 U.S. at 84). A foreclosure action in New York is an *in rem* proceeding. *Federal Deposit Insurance Corp. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999).

Thus, if foreclosing on real property (i.e., enforcing a security interest) is debt collection, then post-discharge foreclosure would be prohibited as an illegal attempt to collect a discharged debt in violation of 11 U.S.C. § 524. However, this

is not the law. Rather, the debtor's discharge only discharges the debt reflected in the note (*in personam* liability), and the mortgage's security interest in the collateral (*in rem* liability) remains unaffected by the discharge.

Because the only remedies sought when Davidson Fink commenced the Foreclosure Action related to enforcing the Lender's security interest in the Premises, Davidson Fink did not act as a "debt collector" engaged in "the collection of any debt" pursuant to 15 U.S.C. § 1692g, and the district court was correct in dismissing the complaint.

### 3. Davidson Fink's § 1692g Notice in the Foreclosure Complaint Does Not Make It a Debt Collector

It is immaterial that Davidson Fink attached and included as part of the Foreclosure Complaint a copy of a "Notice Required by the Fair Debt Collection Practices Act." (App. 21, 74). *See Derisme*, 880 F. Supp. 2d at 373 ("T]he fact that Hunt Leibert took certain precautions to comply with the FDCPA is not dispositive to the Court's analysis as to liability under the FDCPA"); *Roth v. Citimortgage Inc.*, 2013 U.S. Dist. LEXIS 131861, at *31 (E.D.N.Y. Sept. 11, 2013) (court rejected plaintiff's argument that the presence of a disclaimer that "CitiMortgage is a debt collector and any information obtained will be used for that purpose" was sufficient to establish defendant was a debt collector), *aff'd*, 756 F.3d 178 (2d Cir. 2014); *Caires v. JPMorgan Chase Bank, N.A.*, 880 F. Supp. 2d

-31-

288, 306 (D. Conn. 2012) ("whether the FDCPA would apply to a particular

defendant is a legal question and 'merely announcing that one is a FDCPA debt

collector does not make you one.'") (*quoting Fouche´ v. Shapiro & Massey L.L.P.*,

575 F. Supp. 2d 776, 778 (S.D. Miss. 2008)); *Chomilo v. Shapiro, Nordmeyer &*

*Zielke, LLP*, 2007 U.S. Dist. LEXIS 67826, at *17 (D. Minn. Sept. 12, 2007)

(noting Hobson's choice facing law firm, court concluded "[i]t was reasonable for

SNZ to err on the side of caution and include the FDCPA disclaimers in its

communication to Chomilo"); *Natividad v. Wells Fargo Bank, N.A.*, 2013 U.S.

Dist. LEXIS 74067, at *31 (N. D. Cal. May 24, 2013) (warning statement in notice

to debtor that lender who was enforcing security interest may be acting as a debt

collector was "consistent with the inconsistency in the caselaw regarding a

mortgage foreclosure trustee's FDCPA liability" and did not establish that lender,

whose challenged actions did not go beyond enforcing the security interest, was

engaged in debt collection activity); *DeMoss v. Peterson, Fram & Bergman*, 2013

U.S. Dist. LEXIS 64328, at *9 (D. Minn. May 6, 2013) ("The fact that PFB erred

on the side of caution and included the FDCPA disclaimers in its communication,

without more, does not change . . . conclusion" that foreclosure-related mailings

could not be characterized as debt collection, and dismissal of FDCPA claim was

warranted); *Pimental v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 120571,

at *34 (D.R.I. Sept. 4, 2015) (Law firm's use of statutory advisory in letter

pursuant to 15 U.S.C. § 1692e that "this office is attempting to collect a debt" did not convert the communication into debt collection and convert the law firm into a debt collector subject to the FDCPA); *Allison v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 135791, at *4 (W.D. Ky. Sept. 26, 2014) ("Plaintiff points out that the letter itself states that it 'is an attempt to collect a debt …'  However, such a statement is not determinative.  Where the letter by its own terms does not seek collection, a disclaimer will not change its meaning."); *Stamper v. Wilson & Associates, P.L.L.C.*, 2010 U.S. Dist. LEXIS 31770, at*23 (E.D. Tenn. Mar. 31, 2010) (it was "perfectly reasonable" for law firm to err on the side of caution by including FDCPA disclaimers).

### 4. The Cases Carlin Relies on are Distinguishable

Carlin relies on cases in which a law firm sent correspondence to a debtor demanding payment without commencing a foreclosure action, sent correspondence demanding payment prior to commencing the action, or demanded payment or sought a money judgment in the action itself.

In this case, Carlin admitted he did not receive any letter or other communication from Davidson Fink before Davidson Fink filed the Foreclosure Complaint, and Carlin believes Davidson Fink did not send any.  (App. 4, ¶ 16).  For this reason, the cases relied on by Carlin are not dispositive.

In *Romea v. Heiberger & Associates*, 163 F.3d 111 (2d Cir. 1998), this Court held a demand notice a law firm sent to a tenant demanding payment of back rent prior to commencing litigation was a "communication" under 15 U.S.C. § 1692g(a). *Romea*, 163 F.3d at 116. In *Romea*, the law firm sent the notice pursuant to RPAPL § 711 and informed the tenant "that you are hereby required to pay 442 3rd Ave. Realty LLC landlord of [442 Third Avenue], the sum of $2,800 for rent of the premises." The Court concluded back rent met the FDCPA's definition of "debt" and "the § 711 letter . . . was undeniably a 'communication' as defined by the FDCPA in that it conveyed 'information regarding a debt' to another person." *Id*.

In *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir. 2005), the Third Circuit addressed whether the requirements of the FDCPA applied to a law firm's efforts to collect overdue water and sewer obligations secured by a lien on the property pursuant to Pennsylvania's Municipal Claims and Tax Lien Act (MCTLA), 53 P.S. § 7101, *et seq*.

In *Piper*, the law firm sent six collection letters and made a number of telephone calls to plaintiff to obtain payment of the delinquent obligations. *Piper*, 396 F.3d at 229-230. The law firm's letters did not include debt verification language required by 15 U.S.C. § 1692g or information required by 15 U.S.C. § 1692e(11). *Id*. at 230.

-34-

Plaintiff sued, alleging the law firm's efforts to collect payment of the water and sewer obligations violated the FDCPA. The law firm argued its decision to execute on the municipal lien rather than proceed *in personam* against the plaintiff removed its collection efforts from the FDCPA. *Id*. at 232. The Third Circuit held the law firm's communications were "in connection with the collection of debt" because "every letter PLA sent to the Pipers demanded the personal payment of money of the full amount due from them to satisfy their water/sewer obligation. *Id*. at 233. The Third Circuit also found that simply because the MCTLA provided a lien to secure the debt, it did not "change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt." *Id*. at 233.

In *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4th Cir. 2006), a lender retained a law firm to foreclose on plaintiff's property due to her failure to make mortgage payments. *Wilson*, 443 F.3d at 374. The law firm wrote a letter dated September 2, 2003 to plaintiff informing her that she was in default on her loan, her failure to make payments entitled the lender to immediate payment of the balance of her loan, the lender had accelerated her debt, and the law firm was preparing foreclosure papers. *Id*. at 374, 376. The letter contained a 15 U.S.C. § 1692g notice and "validation of debt notice." *Id*. at 374-375. The law firm

-35-

commenced a foreclosure action against plaintiff nine days after sending its letter. *Id*. at 375.

Plaintiff sued, alleging the law firm violated the FDCPA by failing to verify the debt, continuing collection efforts after she contested the debt, and communicating directly with her after her attorney advised the law firm he was representing her. *Id*. at 375.

The Fourth Circuit held that because of the law firm's September 2, 2003 letter, it acted in connection with a "debt." In doing so, it rejected the law firm's argument that a foreclosure action by a trustee under a deed of trust is not the enforcement of an obligation to pay money or a debt, but is a termination of the debtor's equity of redemption relating to the property, and that, in essence, the debtor's debt ceased to be a debt once foreclosure proceedings began. *Id*. at 376. The Fourth Circuit determined the debt remained a debt after the foreclosure proceedings began, and the law firm's actions surrounding the foreclosure proceedings were attempts to collect debts. *Id*. The Court concluded the law firm's argument:

> would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the [FDCPA] when the debt collector uses foreclosure instead of other methods.

-36-

*Id*. In reaching its decision, the Fourth Circuit found it significant that the law firm sent a letter to plaintiff after commencing the foreclosure action, made a specific request for money to "reinstate the above account," and instructed plaintiff to pay the amount by cashier's check made payable to Chase and send it to the law firm. *Id*. at 376-377.

In *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. Appx. 254 (4th Cir. 2012), a law firm filed a replevin action against plaintiff and her nephew for breach of a loan contract for an automobile. In the replevin action, the law firm sought both repossession of the vehicle and money damages. *Rawlinson*, 460 Fed. Appx. 254, 255. Plaintiff sued, alleging the law firm violated the FDCPA because she did not own the automobile or have any liability to the lender. *Id*.

The Fourth Circuit, applying *Wilson*, held a debt secured by personal property is subject to the FDCPA, and "pursuing a replevin action to seek recovery of the vehicle and monetary damages -- rather than only seeking direct payment of the loan -- constitutes an effort to collect the 'debt' under the FDCPA." *Rawlinson*, 460 Fed. Appx. at 256.

In *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006), an attorney filed a foreclosure action on a mobile home against plaintiff, and eventually the mobile home was seized and sold. Plaintiff sued the attorney for violating 15 U.S.C. §

1692g because the attorney did not send a "dunning letter" prior to filing the foreclosure action. *Kaltenbach*, 464 F.3d at 526.

The issue for the Fifth Circuit was whether the attorney was subject to § 1692g if he satisfied the general definition of a debt collector, even though he was merely enforcing a security interest in the mobile home. *Id*. at 527. The Fifth Circuit held the "entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." *Id*. at 528. The attorney argued that even if he met the general definition of a debt collector, he did not need to comply with § 1692g because in his interactions with the plaintiff, he was enforcing a security interest rather than collecting a debt. *Id*. The Court rejected this argument because "[t]o so hold, we would have to conclude that § 1692f(6) is the only section of the FDCPA that regulates the enforcement of security interests." *Id*. In rejecting the argument, the Fifth Circuit rejected the reasoning in numerous cases that held that § 1692f(6) is the only section of the FDCPA that regulates the enforcement of security interests. *Id*. (citing cases).

In *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323 (6th Cir. 2013), the issue for the Sixth Circuit was whether a law firm's filing of a foreclosure action that claimed its client owned the mortgage constituted a "false, deceptive, or misleading representation" under the FDCPA when the bank had not received a

-38-

transfer of the ownership documents when the law firm filed the foreclosure action. *Wallace*, 683 F.3d at 326. The Sixth Circuit held the plaintiff stated a valid claim against the law firm under the FDCPA for stating the wrong identity of the mortgage's owner in a foreclosure complaint. *Id*. The law firm did not argue it was not engaged in debt collection when it filed the foreclosure action, so the court did not address the issue in that case. *Wallace* adds nothing to support Carlin's argument in this case.

Carlin substantially relies on *Glazer v. Chase Home Finance LLC*, 704 F.3d 454 (6th Cir. 2013). In *Glazer*, plaintiff sued a mortgage servicing company and law firm hired to foreclose on property plaintiff inherited. *Glazer*, 704 F.3d at 455-456. Plaintiff alleged the law firm violated the FDCPA by falsely stating in the foreclosure complaint that the servicing company owned the note and mortgage, improperly scheduling a foreclosure sale, and refusing to verify the debt upon request. *Id*. at 457. The issue for the Sixth Circuit was whether mortgage foreclosure was debt collection under the FDCPA. *Id*. at 459.

The Court recognized the majority view of district courts is mortgage foreclosure is not debt collection. *Id*. However, the Court declined to follow the majority approach. The Sixth Circuit stated the FDCPA does not "except from debt collection the enforcement of security interests" but rather "operates to *include* certain persons under the Act (though for a limited purpose); it does not

*exclude* from the Act's coverage a method commonly used to collect a debt." *Id*. at

463 (*citing Piper*, 396 F.3d at 236). In concluding this, the Sixth Circuit asserted

"[o]ther than repossession agencies and their agencies, we can think of no others

whose only role in the collection process is the enforcement of security interests.

A lawyer principally engaged in mortgage foreclosure does not meet this criteria,

for he must communicate with the debtor regarding the debt during the foreclosure

proceedings." *Id*. at 464. The Sixth Circuit stated repossession agencies do not

have to communicate with debtors because they "typically 'enforce' a security

interest . . . when the debtor is not present, in order to keep the peace." *Id*.

Numerous courts have rejected *Glazer's* reasoning, including *Boyd II*, 2013

U.S. Dist. LEXIS 140546, at* 38-41, which specifically adopted the analysis in

*Natividad v. Wells Fargo Bank, N.A*., 2013 U.S. Dist. LEXIS 74067 (N.D. Cal.

May 24, 2013). In *Natividad*, the district court identified several flaws in *Glaze*r:

> Nothing in the [FDCPA] supports *Glazer's* conclusion that an
> entity cannot be considered an enforcer of security interests if
> there are communications between it and the debtor. An entity,
> such as a trustee, is enforcing a security interest when it pursues
> nonjudicial foreclosure as much as a repossession agency is
> enforcing a security interest when it takes possession of a
> vehicle. That entities pursuing nonjudicial foreclosure must
> provide statutorily mandated communications to debtors -- such
> as a notice of default -- does not automatically deprive them of
> their role as enforcers of security interests. In addition, *Glazer*
> appears to assume that the third sentence only includes
> repossessors, as opposed to also excluding repossessors from
> the other provisions of the Act. However, under the broad

-40-

> definition of 'debt collection' articulated by the [*Glazer*] court,
> the activities of repossessors, as the activities of persons
> pursuing mortgage foreclosure, could fall within that definition.
> After all, [according to the *Glazer* court's own reasoning,] the
> ultimate goal of repossessing a vehicle is to pay down an
> outstanding debt -- just as the ultimate goal of foreclosing on a
> mortgage is to satisfy the loan amount. Thus, for the purpose of
> determining what actions comprise collecting debt, and
> therefore who qualifies as a 'debt collector' under the Act, the
> actions of repossessors are not distinguishable from the actions
> of persons pursuing mortgage foreclosure.

*Natividad*, 2013 U.S. Dist. LEXIS 74067, at *26-27.

Further, as explained in *Boyd II*, 2013 U.S. Dist. LEXIS 140546, at* 40-41,

n. 9, the Sixth Circuit relied on § 1692i(a)(1) to support its conclusion that the

enforcement of security interests constitutes debt collection under the FDCPA.

*Glazer*, 704 F.3d at 462. However, § 1692i(a)(1) is a venue provision that requires

a debt collector who brings a legal action against a consumer "to enforce an

interest in real property securing the consumer's obligation" to file the action in the

judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). The Sixth

Circuit stated this provision suggests "filing *any* type of mortgage foreclosure

action, even one not seeking a money judgment on the unpaid debt, is debt

collection under the FDCPA." *Glazer*, 704 F.3d at 462. *Boyd II* explains this is

not true, because "although § 1692i is a venue provision that, by its terms, applies

to only 'debt collectors,' the *Glazer* court erroneously assumes that these debt

collectors are debt collectors because of their mortgage foreclosure activities,

rather than because of other activities that qualify as debt collection under the

FDCPA.  There is nothing in the text of § 1692i to support the *Glazer* court's

assumption."  *Boyd II*, 2013 U.S. Dist. LEXIS 140546, at* 40-41, n. 9.

Thus, while Carlin wants this Court to adopt *Glazer* as controlling in this

Circuit, numerous courts in this Circuit and across the country have concluded it is

a flawed decision.  *But see Rinaldi v. Green Tree Servicing LLC*, 2015 U.S. Dist.

LEXIS 127564 (S.D.N.Y. June 8, 2015) (agrees with *Glazer*).

In *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010),

plaintiff alleged letters sent to her by defendants violated the FDCPA.  The first

letter from Litton advised plaintiff she could avoid foreclosure if she submitted

certain financial information.  *Gburek*, 614 F.3d at 386.  The second letter from

Titanium encouraged plaintiff to contact Litton and attempted to collect the

information sought by the first letter.  *Id*.  The Seventh Circuit concluded the

purpose of both letters was to induce plaintiff to settle her mortgage loan debt to

avoid foreclosure.  *Id*. at 382, 386.

Carlin continues to rely on the Eleventh Circuit's decision in *Reese v. Ellis,

Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), which the

district court recognized in its Reconsideration Decision presented a materially

different fact pattern.

In *Reese*, the law firm for the lender mailed a collection letter to debtors informing them the note securing their security deed was in default for non-payment and demanding full and immediate payment of all amounts due under the note. *Reese*, 678 F.3d at 1214. The law firm further advised debtors in its letter that the lender intended to enforce the provisions of the note and security deed and unless debtors paid all amounts due under the note and security deed within ten days, the law firm would conduct a foreclosure sale of the real property. *Id*.

The Eleventh Circuit determined that even if the law firm intended to give the debtors notice of the foreclosure in its letter, the law firm also demanded payment on the underlying debt. *Id*. Thus, even though the letter related to the enforcement of a security interest, it also related to the collection of a debt within the meaning of 15 U.S.C. § 1692e. *Id.* at 1217. Based on the facts in *Reese*, the Eleventh Circuit stated the rule proposed by the law firm would exempt from § 1692e any communication attempting to enforce a security interest regardless of whether it also attempted to collect the underlying debt, and such a rule would permit the party demanding payment to avoid the requirements of § 1692e by giving notice of the foreclosure. According to the Eleventh Circuit, the practical effect would be the FDCPA would only apply to efforts to collect unsecured debts. *Id*. at 1218.

-43-

The district court properly found *Reese* distinguishable from the facts alleged by Carlin because the law firm's letter in *Reese* specifically demanded payment from the debtors of all amounts due under the note, and the law firm sent the letter prior to the commencement of the foreclosure action.  Carlin does not allege, nor could he, that Davidson Fink made a demand for payment prior to commencing the Foreclosure Action or in the Foreclosure Complaint.

In *Birster v. American Home Mortgage Servicing, Inc.*, 481 Fed. Appx. 579 (11th Cir. 2012), plaintiffs alleged a loan servicer "engaged in a relentless assault of harassing phone calls and home inspections to collect the mortgage debt" in violation of the FDCPA.  *Birster*, 481 Fed. Appx. at 580.  The Eleventh Circuit held plaintiff's allegations supported the conclusion the loan servicer engaged in debt collection activity because the loan servicer was both attempting to enforce a security interest and collect a debt.

In addition to relying on the decision in *Birster*, Carlin also relies on what he claims is the position of the Consumer Financial Protection Bureau ("Bureau") that "foreclosure is debt collection under the FDCPA" in an *amicus curie* brief submitted in *Birster* and a case Carlin cites as *"Vien-Phuong Thi Ho. v. Recontrust Company, Na, et al."* and references only by a web-site in footnote 2 of his Brief.

In fact, in the Bureau's brief in *Birster*, it disavowed Carlin's argument because it specifically stated "[t]he Court need not decide . . . whether foreclosure

by itself constitutes debt collection activity covered by the Act" because "[t]he [plaintiffs'] claims are not based on the foreclosure itself, but rather on [the defendant's] related attempts to induce the [plaintiffs] to pay amounts they owed." *See Natividad*, 2013 U.S. Dist. LEXIS 74067, at 30, n. 5. *See also Masson v. Selene Finance LP*, 2013 U.S. Dist. LEXIS 9872, at *10 (N.D. Cal. Jan. 24, 2013) ("[N]othing in the Bureau's amicus brief suggests that the FDCPA is applicable here. . . . [T]he Bureau did not argue that foreclosure, by itself, constitutes a debt collection activity. In fact, the Bureau expressly declined to address that issue[.]").

Further, the Bureau's interpretation in its *amicus curie* briefs is not entitled to deference because it is only interpreting the FDCPA and not its own regulations. *Aguiar v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 168363, at 15 n. 5 (N.D. Cal. Nov. 26, 2012) (Court rejects giving deference to Bureau's *amicus curie* brief in *Birster* because "[a]n agency interpretation not embodied in any formal issuance from the agency, such as a regulation, guideline, policy statement, or administrative adjudication is entitled to little if any deference.").

In *Hooks v. Forman Holt Eliades & Ravin LLC*, 2015 U.S. Dist. LEXIS 122418 (S.D.N.Y. Sept. 14, 2015), plaintiffs alleged a law firm violated the FDCPA by sending her a letter notice. In *Hooks*, there was no foreclosure action.

According to an earlier decision of the district court in *Hooks* that presented a more complete statement of the facts, in or about December 2009, plaintiffs

-45-

entered into a mortgage agreement arising from the purchase of a timeshare property in Atlantic City. *Hooks v. Forman Holt Eliades & Ravin LLC*, 2012 U.S. Dist. LEXIS 115089, at *2 (S.D.N.Y. Aug. 12, 2012). On April 5, 2011, after having failed to make any payments under the terms of the mortgage agreement, defendants sent plaintiff a letter notice containing a debt validation notice in accordance with FDCPA's requirements and as a request for a deed in lieu of foreclosure. *Id*. Shortly after receiving the letter notice, plaintiffs executed a deed in lieu of foreclosure and delivered it to defendants in late May 2011. *Id*. at *3.

The district court in *Hooks* followed the district court's Initial Decision in this case and determined that "although one purpose of the letter was mortgage foreclosure and such enforcement of a security interest is not subject to the FDCPA, the [letter] sought to accomplish debt collection as well." *Hooks*, 2015 U.S. Dist. LEXIS 122418, at *32.

In *Shapiro & Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992), a law firm commenced a foreclosure action in a county where the property was not located. The court held attorneys who otherwise met the § 1692a(6)(F) definition were debt collectors under the FDCPA. *Shapiro*, 823 P.2d at 124. The court noted that originally, an attorney collecting a debt as an attorney on behalf of and in the name of a client was exempt from the FDCPA, but in 1986, Congress repealed the attorney exemption. *Id*. The court concluded that by deleting the exemption in its

entirety, debt collectors included attorneys whose practices were limited to purely legal activities if they otherwise meet the definition in § 1692a(6). *Id.* at 125.

In *Vincent v. The Money Store*, 736 F.3d 80 (2d Cir. 2013), plaintiffs alleged The Money Store falsely used the name of a law firm when The Money Store send out thousands of collection letters falsely indicating that the law firm was retained to collect the debts when The Money Store itself was collecting the debts. *Vincent*, 736 F.3d at 91.

This Court held "[w]here a creditor, in the process of collecting its own debts, hires a third party for the express purpose of representing to its debtors that the third party is collecting the creditor's debts, and the third party engages in no bona fide efforts to collect those debts, the false name exception exposes the creditor to FDCPA liability." *Vincent*, 736 F.3d at 91.

In short, all of the cases relied on by Carlin are factually distinguishable in crucial ways. Further, in *Boyd II*, 2013 U.S. Dist. LEXIS 140546, at* 27-42 (E.D.N.Y. Sept. 27, 2013), the district court rejected as "flawed" the analysis of a number of the cases relied on by Carlin, including *Glazer*, *Wallace*, *Reese*, *Wilson*, and *Birster*. Finally, Carlin premises his arguments by his repeated mischaracterization that Davidson Fink seeks a deficiency judgment in the Foreclosure Complaint, and thus is attempting collect money from Carlin. Because the Foreclosure Complaint only seeks to enforce the Lender's security interest in

-47-

the Premises, Davidson Fink did not act as a "debt collector" engaged in "the collection of any debt" pursuant to 15 U.S.C. § 1692g, and the Court should affirm the dismissal of the complaint.

## II. THERE ARE ALTERNATIVE REASONS TO AFFIRM THE DISTRICT COURT'S DISMISSAL OF CARLIN'S COMPLAINT

Because Davidson Fink did not act as a "debt collector" engaged in "the collection of any debt" pursuant to 15 U.S.C. § 1692g, the FDCPA did not apply. However, assuming *arguendo* the FDCPA applies, there are other reasons to affirm the district court's dismissal of the complaint because Carlin cannot establish a claim for relief pursuant to 15 U.S.C. § 1692g(a)(1). First, no "initial communication" exists between Davidson Fink and Carlin. Second, Davidson Fink sufficiently provided the "amount of the debt" to Carlin. Thus, even if this Court concludes Davidson Fink engaged in debt collection activities for purposes of all sections of the FDCPA, including 15 U.S.C. § 1692g, the complaint should still be dismissed.

### A. There Was No "Initial Communication" Between Plaintiff and Davidson Fink

#### 1. Davidson Fink's Foreclosure Complaint Was Not an Initial Communication

Carlin alleges Davidson Fink violated 15 U.S.C. § 1692g(a)(1) because it did not provide him with the "amount of the debt." (App. 4).

Section 1692g(a) of the FDCPA requires that once a debt collector has an "initial communication" with a consumer (i.e., debtor), the debt collector has five days to communicate in writing to the consumer certain enumerated information set forth in § 1692g(a)(1)-(5), including the amount of the debt (Subsection (1)) and the right to challenge the debt within thirty day after receipt of the notice (Subsection (3)).

If an "initial communication" does not take place, the thirty-day clock to challenge the debt never begins to run." *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 387 (E.D.N.Y. 2011). *See also Kamen v. Steven J. Baum, P.C.*, 659 F. Supp. 2d 402, 406 (E.D.N.Y. 2009) (court dismissed complaint for failure to state a claim, holding the summons and notice of pendency constituted legal pleadings exempt from definition of "initial communication," and because neither document constituted an "initial communication," they were not subject to the FDCPA debt validation notice); *Valle v. Bendett & McHugh, P.C.*, 2015 U.S. Dist. LEXIS 133111, at *25 (D. Conn. Sept. 30, 2015) ("ValleCastro has nevertheless failed to identify an 'initial communication' pursuant to section 1692g(a) that would allow this court to access when and whether a [FDCPA] violation has taken place.").

Thus, there cannot be a violation of § 1692g until and unless the debtor sends an "initial communication" to the debtor, thereby triggering the requirements

of the statute.  Carlin acknowledges he did not receive any letter or other communication from Davidson Fink prior Davidson Fink filing the Foreclosure Action, and he believes "none was sent."  (App. 4 ¶ 16).

Section 1692g(d) of the FDCPA specifically states "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)."

Carlin argues Davidson Fink violated the FDCPA because it included as part of the Foreclosure Complaint a § 1692g notice, and the § 1692g notice itself constituted an initial communication requiring Davidson Fink to comply with 15 U.S.C. § 1692g.

The district court, citing § 1692g(d), rejected Carlin's argument and held in its Initial Decision that "[w]ith respect to the Foreclosure Complaint, it and its exhibits, including the Debt Collection Notice, were not 'initial communications' under the FDCPA as a matter of law."  (App. 285).  Carlin argued the § 1692g notice alone was an "initial communication" because it was an attempt to collect a debt.  (App. 286).  The district court rejected Carlin's argument, citing *Lane*, 767 F. Supp. 2d 382, 386 (App. 286) ("the state court foreclosure complaint is readily resolved to not be an initial communication because Subsection 1692g(d) explicitly provides that legal pleadings are not initial communications, notwithstanding the fact that a debt collection notice was included with the summon and complaint.")

-50-

(internal quotations omitted).  *See also Kamen*, 659 F. Supp. 2d at 406 (summons and complaint constitute a single pleading subject to the FDCPA exemption of the definition of an "initial communication").

Carlin relies on *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219 (2d Cir. 2015), to support his argument that the § 1692g notice in the Foreclosure Complaint was an "initial communication" under the FDCPA.  In *Hart*, defendant sent plaintiff a letter entitled "Transfer of Servicing Letter" notifying plaintiff that defendant had become his mortgage loan servicer and instructing that "beginning June 28, 2012 you should mail your payments, including all past due payments" to defendant.  *Hart*, 797 F.3d at 221.  Defendant moved to dismiss because it only intended for the letter to provide transfer of servicing information to plaintiff to comply with the Real Estate Settlement Procedures Act, 12 U.S.C. § 1692, et seq.  *Hart* did not involve a foreclosure action.

This Court concluded whether a communication is "in connection with the collection of [a] debt" is a question of fact a court must determine by reference to an objective standard, and plaintiff sufficiently alleged the letter was an attempt to collect a debt.  *Hart*, 797 F.3d at 225-226.  *Hart* is distinguishable because Davidson Fink's § 1692g notice was attached as part of the Foreclosure Complaint, and was not sent in a letter prior to the commencement of the Foreclosure Action.

2.   Carlin's July 12, 2013 Letter Was Not an
     Initial Communication

Carlin next argues his July 12, 2013 letter constitutes an "initial communication."  Numerous courts have held the protections in the FDCPA do not apply to communications initiated by debtors.  *See*, *e.g.*, *Lane,* 767 F. Supp. 2d at 387 ("In the Court's view, by describing the 'initial communication' as being 'in connection with the collection of any debt" Congress was identifying an attempt *by the debt collector* to collect the debt.") (emphasis in original); *Roth v. Citimortgage Inc.*, 2013 U.S. Dist. LEXIS 131861, at *31 (E.D.N.Y. Sept. 11, 2013) ("The FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers."); *Derisme*, 880 F. Supp. 2d at 368-369 ("Courts in this circuit have held that the 'FDCPA's protections are not triggered by communications initiated by someone other than the debt collector.'") (*quoting Boyd v. J.E. Robert Co.*, 2010 U.S. Dist. LEXIS 140905, at * 42 (E.D.N.Y. Mar. 31, 2010)); *Gorham-Dimaggio v. Countrywide Home Loans*, Inc., 2005 U.S. Dist. LEXIS 34237, at *7 (N.D.N.Y. Aug. 30, 2005) ("[W]hen the consumer initiates the communications, many of the policy reasons behind the FDCPA disappear.") (*citing Kropelnick*, 290 F.3d at 127); *Valle*, 2015 U.S. Dist. LEXIS 133111, at *26 ("In the present case, however, ValleCastro does not allege that Bendett communicated with her in any way prior to filing the suit.  And, as Bendett

-52-

correctly argues, ValleCastro cannot initiate communications that trigger section 1692g."); *Nichols v. Washington Mutual Bank*, 2007 U.S. Dist. LEXIS 85936, at *15 (E.D.N.Y. Nov. 21, 2007) ("FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers."); *Campbell v. Credit Bureau Services, Inc.*, 655 F. Supp. 2d 732, 741 (E.D. Ky. 2009) ("The clear language of § 1692g(a), however, is that an initial communication is sent by the debt collector, not by the debtor.").

> ### 3. Davidson Fink's August 9, 2013 Letter Was Not an Initial Communication

Finally, Carlin argues Davidson Fink's August 9, 2013 letter and attachments that supplied the information Carlin requested in his July 12, 2013 letter constitute an "initial communication." Carlin's argument is incorrect. *See*, *e.g.*, *Campbell*, 655 F. Supp. 2d at 742 ("[t]he responses of Defendants GLA and CBSI to Plaintiff Campbell's untimely requests for information should not be considered initial communications required to contain the notification or to trigger the five-day notification period. Such a disincentive to debt collectors to cooperate with and provide information to debtors would not serve the purposes of the FDCPA. . . . The choice made by both Defendants here to provide the requested information should be applauded, not penalized.").

If Carlin's argument is accepted, then a law firm's first communication after commencing a foreclosure action would be an "initial communication," even though the matter was in litigation and the debtor would be entitled to discovery and the protection of the court and his attorney in the foreclosure action. Indeed, Carlin retained an attorney in the Foreclosure Action who served an answer containing eleven affirmative defenses and a voluminous first set of interrogatories. (App. 103-111, 112-113, 115-135, 136-137).

For this reason, this Court and district courts in the Circuit have concluded "the protective purposes of the FDCPA typically are not implicated when a debtor is instead protected by the court system and its officers." *Gabriele v. American Home Mortgage Servicing, Inc.*, 503 Fed. Appx. 89, 96, n. 1 (2d Cir. 2012). *See Kropelnick*, 290 F.3d at 127 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."); *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) ("Debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled."); *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, 2012 U.S. Dist. LEXIS 136408, at *18 (D. Conn. Sept. 24, 2012) ("Because litigants in state court already enjoy myriad procedural and

substantive protections from fraudulent and deceptive practices, resort to the FDCPA is unnecessary"); *Derisme*, 880 F. Supp. 2d at 367 ("[I]t does not appear that the purpose of the FDCPA is furthered by its application to a Connecticut judicial foreclosure action. While the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system and Connecticut foreclosure law as was the case here."); *Cocco v. Bank of America Home Loans*, 2012 U.S. Dist. LEXIS 173663, at *3-4 (N.D.N.Y. Dec. 3, 2012) ("Here, it appears from the Complaint that there are (or were) ongoing foreclosure proceedings. The protective purposes of the FDCPA typically are not implicated when a debtor is instead protected by the court system and its officers."); *Carubia v. Cohen & Slamowitz LLP*, 2015 U.S. Dist. LEXIS 7700, at *8 (N.D.N.Y. Jan. 23, 2015) ("Insofar as this kind of 'communication' falls within the FDCPA's broad definition of that term, it also falls well within the boundaries of ordinary litigation -- something which the FDCPA cannot possibly have been intended to discourage."); *see also Calvert v. Alessi & Koenig, LLC*, 2013 U.S. Dist. LEXIS 20017, at *9 (D. Nev. Feb. 12, 2013) (follows *Derisme*, and concludes "state foreclosure law provides sufficient protection to the debtor, obviating the need for full-blown FDCPA regulation").

Because 15 U.S.C. § 1692g(a) was not triggered, Carlin cannot establish he notified "the debt collector in writing within the thirty-day period" to be entitled to debt verification pursuant to 15 U.S.C. § 1692g(b).

> B.    Davidson Fink Provided Carlin With the Amount of the Debt

The sole claim Carlin asserts is Davidson Fink violated 15 U.S.C. § 1692g(a)(1) by failing to furnish Carlin with "a statement of the amount of the debt." (App. 6, ¶ 26). In fact, Davidson Fink's August 9, 2013 letter and documents provided Carlin with the amount of the debt.

Among the documents Davidson Fink enclosed with its August 9, 2013 letter to Carlin was a payoff statement dated July 31, 2013 that stated the "Total Amount Due" was $205,281.79, and this payoff amount was good through August 14, 2013. The payoff statement also explained how interest was calculated on the principal balance, and further informed Carlin that because the Total Amount Due "may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to [August 14, 2013], but which are not yet due as of the date this Payoff Statement is issued [July 31, 2013]," Carlin would receive a refund if he paid the Total Amount Due and "those anticipated fees, expenses, or payments have not been incurred."

Carlin relies on *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), to support his argument that Davidson

-56-

Fink did not provide "the amount of the debt" to Carlin. In *Miller*, the Seventh Circuit drafted a "safe harbor" statement to use to satisfy the "amount of debt" provision of 15 U.S.C. § 1692g(a)(1) where the amount due varied from day to day, but the Court also specifically stated that a debt collector was not required to use "this form of words" to avoid violating the statute. *Miller*, 214 F.3d at 876.

In *Williams v. OSI Educational Services, Inc.*, 505 F.3d 675 (7th Cir. 2007), a debt collector sent a letter and debt validation notice informing the debtor that it sought to collect the "Total Due," and contained a breakdown of the amount owed. *Williams*, 505 F.3d at 677. The letter also stated "[t]he balance may not reflect the exact amount of interest which is accruing daily per your original agreement with your creditor. Contact us to find out your exact payout balance." *Williams*, 505 F.3d at 677. The court held the letter set forth the amount of the debt with sufficient clarity and accuracy to conform to the FDCPA. In doing so, it noted *Miller* did not support plaintiff's argument, explaining *Miller* did not require the use of the safe harbor language, and it was "compliance with the statute, not our suggested language, that counts." *Williams*, 505 F.3d at 680.

In *Golubeva v. GC Services Limited Partnership*, 767 F. Supp. 2d 369, 371 (E.D.N.Y. 2010), a debt collector sent a collection letter to plaintiff that listed the balance due as $18,922.59 with an asterisk that referred to a disclaimer at the bottom of the letter that stated: "[b]ecause of interest, late charges, and other

charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you."  The court found this language mirrored the "safe harbor" language in *Miller*, and granted defendant's motion to dismiss.  In doing so, it stated "[p]laintiff is essentially seeking to use defendant's attempts at full disclosure against it, by grasping at straws to find any possible language that could be 'confusing' and arguing that it as [sic] an FDCPA violation.  This statute was not designed to provide monetary awards to creative plaintiffs, or to require debt collectors to disclaim away every possible term and interpretation.  It simply forces debt collectors to refrain from using false, deceptive or misleading practices."

Davidson Fink's August 9, 2013 letter and documents furnished Carlin with the "amount of the debt."

## CONCLUSION

Davidson Fink respectfully requests the Court affirm the judgment

dismissing Carlin's complaint with prejudice for the reasons discussed in this brief.

Dated:   January 5, 2016

**DAVIDSON FINK LLP**

/s/ Andrew M. Burns
Andrew M. Burns
First Federal Plaza
28 East Main Street, Suite 1700
Rochester, New York 14614
(585) 784-4800
aburns@davidsonfink.com

**L'ABBATE, BALKAN, COLAVITA
    & CONTINI, L.L.P.**

/s/ Matthew J. Bizzaro
Matthew J. Bizzaro
1001 Franklin Avenue
Garden City, New York 11530
(516) 294-8844
mbizzaro@lbcclaw.com

Attorneys for defendant-appellee
    Davidson Fink LLP

-59-

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.      This brief complies with the type-volume limitation of  Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,978 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), according to the word count feature of the program by which it was prepared.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

**DAVIDSON FINK LLP**

/s/ Andrew M. Burns
Andrew M. Burns
First Federal Plaza
28 East Main Street, Suite 1700
Rochester, New York 14614
(585) 784-4800
aburns@davidsonfink.com